## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOLOMON FORTUNE, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>VIVENDI TICKETING US, LLC D/B/A SEE TICKETS USA, LLC<br><br>                              Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Solomon Fortune brings this action on behalf of himself, and all others similarly situated against Vivendi Ticketing US, LLC d/b/a See Tickets USA, LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      For over two years, Defendant has nickel and dimed event-goers on its website in violation of the New York Arts and Cultural Affairs Law § 25.07(4).  Whenever a consumer visits the website SeeTickets.us and selects an event, they are not shown the total cost up-front.  Instead, consumers are presented an item price, flanked by bundled, ballooning, and misleading fees.  It is only once consumers reach the final checkout screen that they see the total cost, which includes fees that *are higher* than initially quoted.  But consumers mustn't take too much time to scrutinizing the final screen to figure out they're being duped.  Because New York is a busy place, and because the full fees are only flashed *after* consumers selects their tickets, Defendant can plausibly put its customers on a shot clock and tell them they need to decide quick, because

1

Defendant cannot hold their seats open forever.  This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

2.      To stop this hustle, New York passed Arts and Cultural Affairs Law § 25.07(4), which provides that "every operator … of a place of entertainment … shall disclose the <u>total cost</u> of the ticket, inclusive of <u>all</u> ancillary fees that must be paid in order to purchase the ticket." "Such disclosure of the total cost and fees shall be displayed in the ticket listing <u>prior to</u> the ticket being selected for purchase."  *Id*. (emphasis added).  "Disclosures of subtotals, fees, charges, and any other component of the total price <u>shall not be false or misleading</u>."  *Id.* (emphasis added).  And "[t]he price of the ticket shall not increase during the purchase process." *Id.*  This latest version of the law went into effect August 29, 2022.  *See* Exhibit A.

3.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other ticket purchasers for Defendant's events in the state of New York for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affairs Law § 25.33.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.  Defendant sold at least 100,000 tickets to events taking place in the state of New York through its website during the applicable class period, and is liable for a minimum of fifty dollars in statutory damages for each ticket sold.

5.      This Court has personal jurisdiction over Defendant because Defendant operates a website that sells tickets to events taking place in the state of New York through its website.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

7.      Plaintiff Solomon Fortune is an individual consumer who, at all times material hereto, was a citizen and resident of New York, New York.  Plaintiff purchased two tickets to events held in Brooklyn, New York.  The first ticket was for a DJ set performing at a venue called 3 Dollar Bill, on June 11, 2023.  The second ticket was for a dance party with live music at a venue called 9 Bob Note, on October 21, 2023.  The tickets were purchased on June 9, 2023, and October 21, 2023, respectively, through Defendant's website, www.SeeTickets.us.  The transaction flow process he viewed on Defendant's website was substantially similar as that depicted in Figures 1 through 11 in this complaint.

8.      Defendant See Tickets USA, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, CA.  Defendant sells event tickets throughout the United States, including in the state of New York.  Defendant owners and operates the website https://www.SeeTickets.us/.

**RELEVANT FACTUAL ALLEGATIONS**

9.      When an event-goer visits Defendant's website, SeeTickets.us, on the main page, they can search for music, comedy, live performance, and other tickets by event, talent, organizer, or location, including those events taking place in New York.   *See* Figure 1, next page.

**Figure 1**



10.     After a user selects an event and particular day, the purchase process begins and users are prompted to select their ticket type and quantity.  *See* Figure 2.  On this screen, the "total cost" of the ticket is never shown, in violation of New York Arts & Cultural Affairs Law § 25.07(4).  *See* Figure 2.  Instead, Defendant quotes an item price ("Item Price") and a "SRV FEE" and "FAC FEE," neither of which are defined.  It is unclear whether those fees are bundled into the quoted item price or tacked onto it later.  *See* Figure 2, *next page*.  It is also unclear whether these fees are fixed and apply on a per-ticket basis, or apply per-order.

**Figure 2**



11.     The purpose of these fees is never explained.  There is a (?) symbol next to the "SRV FEE" but no symbol next to the "FAC FEE."  A reasonable consumer might believe the "SRV FEE" is a service fee.  He or she would be mistaken.  If a consumer hovers his or her mouse over the (?) symbol, he or she discovers that the singular "SRV FEE" is actually a Russian nesting doll *for two fees*: the "PROCESSING FEE + CUSTOMER FEE."  *See* Figure 3, *next page*.

**Figure 3**



12.     Even then, the purpose of the fees is never explained.  The Customer Fee is especially puzzling, because what consideration does a customer receive in exchange for this fee? Isn't the fee every customer pays the ticket price?

13.     *After* a consumer selects a desired quantity of tickets, he or she can click the Checkout button on Figure 2.  Depending on the location of the event selected, the relevant button on the ticket selection page may also say "ADD TO CART," and may, or may not, include a "FAC FEE."  *See* Figures 4 and 5 (showing same ticket selection page for different events).

**Figure 4**

**Figure 5**



14.     Ticket selection pages like the ones depicted in Figures 4 and 5 make the consumer go through one extra step.  *After* the consumer clicks "ADD TO CART," the "CHECKOUT" button on upper right-hand side of the screen is illuminated and displays the total due, but not the total cost of each ticket.  To then proceed, they must click "CHECKOUT."

15.     Regardless of the whether the "Ticket Selection Page" has one step (like Figure 2), or two steps (like Figures 4 and 5), they all violate ACAL § 25.07 (4) in the same way.  The pages all fail to "disclose the total cost of *the* ticket, inclusive of all ancillary fees … in the ticket listing prior to the ticket being selected for purchase."  (Emphasis added).  In other words, the total cost of each ticket is never disclosed before a consumer first clicks either the "CHECKOUT" button in Figure 2 or the "ADD TO CART" in Figures 4 and 5.  Both types of Ticket Selection Pages also fail to "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser."  ACAL § 25.07(4).

16.     After the consumer clicks the "CHECKOUT" button, Defendant interrupts the purchase flow by prompting the consumer to either sign in, create an account, or checkout as a guest.  *See* Figure 6.

**Figure 6**



17.     After a consumer completes signing in or checking out as a guest, they are taken to the final payment page.  At the very top of the page, a ten-minute countdown timer begins.  On a full-size computer screen with standard 1920 x 1080 resolution at 100% zoom, the page is too large to see in one window and requires scrolling.  Figure 7, below, shows the page on a full-size computer screen with 1920 x 1080 resolution at 50% zoom.

**Figure 7**



18.     Figures 8 and 9, next page, show the page at 100% resolution.  A breakdown of charges is not shown on the top of the screen, only the total due.  *See* Figure 8.  A breakdown of charges is only be seen by scrolling to the bottom of the page.  *See* Figure 9.  Significantly, a consumer is *not* required to scroll to bottom of the screen and see the breakdown of charges before completing the transaction.  Instead, the "Buy Now" button on the top of the screen becomes

illuminated once a consumer completes filling in the basic information, billing address, payment details, and ticket protection forms above.

**Figure 8**



**Figure 9**

19.    As the Second Circuit cautioned, even when "Internet users may have … 'as much time as they need' to scroll through multiple screens on a webpage, [] there is no reason to assume

that viewers will scroll down to subsequent screens simply because screens are there." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.). "Only curiosity or dumb luck might bring a user to discover the" breakdown of charges. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (*citing Specht*).

20.    If, by happenstance, a consumer purchasing multiple tickets *does* notice the breakdown of charges, they may—or may not—notice that the previously quoted fees have been inflated. Whereas on Figure 5, the SRV and FAC fees were quoted at $3.89 and $3.00 respectively (without explanation of whether they would be applied on a per-transaction or per-ticket basis), on the bottom of the payment page on Figure 9, those same fees have now ballooned to $11.67 and $9.00, respectively.



21.    To even notice this discrepancy on the final page, not only would consumers need to scroll to the bottom of the page, but they would also need good memory and an ability for quick mental math.  In practice, however, consumers are ***not*** given, "'as much time as they need' to scroll through multiple screens on a webpage," *Specht*, 306 F.3d at 32, to figure out how they being cheated.  As noted, there is a ten-minute countdown timer on the page rushing the consumer to complete the transaction.

22.    If the clock runs out, consumers are kicked out, and must start the purchase process all over again.  *See* Figure 10, below.  Better luck next time.

**Figure 10**



23.    What is more, the checkout flow and the disclosures Defendant presents to consumers is the same whether they proceed via their web browser on a computer, as depicted in Figures 1 through 10, or through a web browser on a phone.  *Compare* Figure 5 *with* Figure 11, below (screenshot taken from mobile phone).

**Figure 11**



24.     Defendant might note that for some purchase flows for certain events like those depicted in Figures 4, 5 or 11, (but not Figure 2), where the site requires users to take users to take an *extra step to* checkout by clicking an "Add to Cart" button before clicking, they disclose the total amount due, before the user clicks the "checkout button."  *See, e.g.*, Figure 11 (showing $234.81 as the total amount due for 3 tickets).  However, this misses the mark because, as Senator James Skoufis told another federal court in this District when it was deciding the very first decision under this newly-enacted law, the purpose of ACAL § 25.07(4) was to ensure that "the first price you see for a ticket should be the price you pay for a ticket.  That was the unmistakable objective broadcast by my Office, which <u>correspondingly required removing all</u> <u>'clicks'</u> and subsequent page views from the purchasing process."  *Charles v. Color Factory*,

Case No. 1:24-cv-00322-JSR, ECF No. 21 at 1-2 (S.D.N.Y. Apr. 5, 2024) (emphasis added).

"Absent this clear understanding, there is no way for an individual to make a conclusion he or

she is getting the best value money can buy, which often must be decided quickly due to … set

timeframes during which tickets must be purchased… (e.g. 'clocks.')." *Id*. at 2.  The Senator

also warned: "Instead of easily complying with this enacted provision by its effective date in

2022, many sellers and resellers actively implemented purchasing obstacles that made buyers

click through multiple screens, affirmatively toggle on the 'all-in pricing' option, or <u>simply do</u>

<u>math in their heads before securing their preferred tickets</u> – all of which we vehemently

communicated as unsatisfactorily adhering to the statute." *Id*.

     25.    Moreover, disclosures of the total cost *of the order* in the <u>middle</u> of the ticket

purchase process, like Figure 11, still violate ACAL § 25.07(4) because they neither (1)

"disclose the <u>total cost of *the* ticket</u>, inclusive of all ancillary fees," nor (2) do they make such

disclosure "in the ticket listing <u>prior to the ticket being selected for purchase</u>."  (Emphasis

added).  In other words, the total cost of each ticket is never disclosed before a consumer first

clicks the "ADD TO CART" in Figures 4 and 5.  Worse yet, Figures 4, 5, and 11 all fail to

"disclose in a <u>clear and conspicuous</u> manner the portion of the ticket price stated in dollars that

represents a service charge, or any other fee or surcharge to the purchaser."  ACAL § 25.07(4).


**NEW YORK ARTS & CULTURAL AFFAIRS LAW**

     26.    Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law §

25.07(4), which provides that "any licensee or other ticket reseller, or platform that facilitates the

sale or resale of tickets shall disclose the <u>total cost of the ticket, inclusive of all ancillary fees</u> that

must be paid in order to purchase the ticket, and disclose in a <u>clear and conspicuous manner</u> the

portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." *Id.* (emphasis added); *Compare with* Figures 2, 4, and 5. "Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." *Id*. (emphasis added); *Compare with* Figures 2, 4, 5, and 11. And "[t]he price of the ticket shall not increase during the purchase process." *Id.*; *Compare with* Figures 2, 4, 5, 8, and 9. "Disclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading." N.Y. Arts & Cult. Aff. Law § 25.07(5); *Compare with* Figures 2, 4, 5, 8, and 9.

27.    Shortly after the law was enacted, ticketing websites peppered the State of New York's Division of Licensing Services with questions about the scope of the law. As explained by the Division of Licensing Services, "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices." *See* N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461*, attached hereto as Exhibit A, at 1. "From the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself." *Id.* "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser." *Id*. at 2 (emphasis added).

## CLASS ACTION ALLEGATIONS

28.    **Nationwide Class**: Plaintiff seeks to represent a class defined as all individuals in the United States who purchased online tickets to any event in New York using Defendant's

website on or after August 29, 2022.  Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

29.     **New York Subclass**: Plaintiff also seeks to represent a subclass defined as all individuals in the state of New York who purchased electronic tickets to any event in New York using Defendant's website on or after August 29, 2022.  Excluded from the New York Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

30.     Members of the Nationwide Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and New York Subclass number in the hundreds of thousands.[1]  The precise number of Nationwide Class and New York Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and New York Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

31.     Common questions of law and fact exist as to all Nationwide Class and New York Subclass members and predominate over questions affecting only individual Nationwide Class and New York Subclass members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4); (b) whether the displayed price of Defendant's tickets increases

---

[1] According to the website traffic analytics company Similarweb, Defendant's website has received 10.14 million visits in the last three months, with 96.83% of the website traffic coming from the United States. *See* https://pro.similarweb.com/#/digitalsuite/websiteanalysis/overview/website-performance/*/999/3m?webSource=Total&key=seetickets.us.  Approximately 5.69% of the United States population resides in the State of New York.  So assuming New Yorkers visited Defendant's website in equal proportions to other Americans, then Defendant received over 576,966 visitors from the state of New York during this time period.  This is to say nothing of other Americans that live in surrounding states like New Jersey or Connecticut, who may also wish to purchase tickets to see films in New York City or other areas in New York State.

during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4);

and (c) whether Defendant was false or misleading in disclosing subtotals, fees, charges, and any

other component of the total price in violation of N.Y. Arts & Cult. Aff. Law § 25.07(4). The

claims of the named Plaintiff are typical of the claims of the Nationwide Class and New York

Subclass in that the named Plaintiff and the Nationwide Class and New York Subclass sustained

damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to

disclose or misleading the total cost of their tickets, including Defendant's various fees,

throughout the online ticket purchase process.

     32.     Plaintiff is an adequate representative of the Nationwide Class and New York

Subclass because his interests do not conflict with the interests of the Nationwide Class and New

York Subclass members he seeks to represent, he has retained competent counsel experienced in

prosecuting class actions, and he intends to prosecute this action vigorously. The interests of

Nationwide Class and New York Subclass members will be fairly and adequately protected by

Plaintiff and his counsel.

     33.     The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of Nationwide Class and New York Subclass members. Each

individual Nationwide Class and New York Subclass member may lack the resources to undergo

the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendant's liability. Individualized litigation increases the delay and

expense to all parties and multiplies the burden on the judicial system presented by the complex

legal and factual issues of this case. Individualized litigation also presents a potential for

inconsistent or contradictory judgments. In contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendant's liability. Class

treatment of the liability issues will ensure that all claims and claimants are before this Court for

consistent adjudication of the liability issues.

**COUNT I**
**New York Arts & Cultural Affairs Law § 25.07**
**(On Behalf Of The Nationwide Class and New York Subclass)**

34.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully

set forth herein.

35.    Plaintiff brings this claim individually and on behalf of the members of the

Nationwide Class and New York Subclass against Defendant.

36.    Defendant is a "licensee or other ticket reseller, or platform that facilitates the sale

or resale of tickets" to a "place of entertainment," because Defendant owns, operates, or controls

the SeeTickets.us website, which is a place where consumers can purchase tickets to a variety of

music, comedy, and other live performance events. "'Place of entertainment' means any

privately or publicly owned and operated entertainment facility such as a <u>theatre</u>, stadium, arena,

racetrack, museum, amusement park, or other place where <u>performances</u>, <u>concerts</u>, exhibits,

athletic games or contests are held for which an entry fee is charged." N.Y. Arts & Cult. Aff.

Law § 25.03(6) (emphasis added).

37.    Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing

to disclose the "<u>total cost of the ticket</u>, inclusive of all ancillary fees that must be paid in order to

purchase the ticket … <u>prior to the ticket being for purchase</u>" on the ticket selection screens

depicted in Figures 2, 4, 5 and 11 of this Complaint.

38.    Moreover, the "disclosure[] of … fees, charges, and any other component of the

total price" as depicted in Figures 2, 4, 5 and 11 are "false and misleading" because it is unclear

18

whether the ancillary fees—i.e., the "SRV FEE" and "FAC FEE"—are applied on a per-transaction or per-ticket basis, as depicted in Figures 2, 4, 5, and 11 of this Complaint.  It is also unclear whether the "SRV FEE" and "FAC FEE" are included in the displayed price, as depicted in Figures 2, 4, 5, and 11 of this Complaint, or tacked on at the end of the purchase process, as depicted in Figures 8 and 9 of this Complaint.

39.     Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the price of its tickets during the purchase process, as depicted in Figures 2, 4, 5, 8, and 9 of this Complaint.

40.     Defendant's per ticket "SRV FEE" and "FAC FEE" are "ancillary fees that must be paid in order to purchase the ticket."  N.Y. Arts & Cult. Aff. Law § 25.07(4).

41.     On June 9, 2023, and October 21, 2023, Plaintiff purchased two tickets on Defendant's website, and was forced to pay Defendant's $4.33 and $4.79 Service Fees.  Plaintiff was harmed by paying these unlawfully applied service charges.  Because the total cost of the tickets were not disclosed to Plaintiff at the beginning of the purchase process, the resulting service charges that were applied were unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).

42.     Plaintiff was also harmed by not having the total cost of his tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of his tickets before Plaintiff selected his tickets for purchase from Defendant, Plaintiff could not shop around for tickets from other ticket sellers like EventBrite, or Tick Pick, just to name a few.  As such, Plaintiff had no way of knowing whether he was getting the best deal his money could buy.  By hiding its service charges, Defendant was able to reduce price competition and cause consumers like Plaintiff to overpay.

43.    Plaintiff and Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

44.    At the time Plaintiff purchased his tickets, he was not aware that Defendant's service charge was unlawful under the New York Arts & Cultural Affairs Law.  Plaintiff was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with his counsel prior to purchasing his tickets.  Plaintiff was instead browsing Defendant's website because he sincerely intended to purchase tickets, and he did, in fact, purchase those tickets.

45.    On behalf of himself and members of the Nationwide Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees.  *See* N.Y. Arts & Cult. Aff. Law § 25.33.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and New York Subclass, prays for judgment as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the

        Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees

        and expenses and costs of suit.

Dated: November 5, 2024                    **BURSOR & FISHER, P.A**.

                                           By:   */s/ Philip L. Fraietta*
                                                  Philip L. Fraietta

                                           Philip L. Fraietta
                                           1330 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile: (212) 989-9163
                                           Email: pfraietta@bursor.com

                                           Stefan Bogdanovich (*pro hac vice app.
                                           forthcoming*)
                                           1990 North California Blvd., Suite 940
                                           Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
                                           Facsimile:  (925) 407-2700
                                           E-mail: sbogdanovich@bursor.com

                                           *Attorneys for Plaintiff*