**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SOLOMON FORTUNE, individually and on
behalf of all others similarly situated,

               Plaintiff,

          -against-

VIVENDI TICKETING US, LLC D/B/A SEE
TICKETS USA, LLC,

             Defendant.

---

Case No. 1:24-cv-08415-JPC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .............................................................................................. 4

    A.    STATUTORY BACKGROUND .......................................................... 4

    B.    FACTUAL BACKGROUND ............................................................... 5

III.   LEGAL STANDARD........................................................................................ 8

IV.   ARGUMENT ................................................................................................... 9

    A.    Plaintiff Has Not Plausibly Alleged a Violation of Section 25.07(4).................... 9

        1.    Plaintiff has not pled a statutory violation because the Complaint itself discloses compliance.......................................................... 9

        2.    Plaintiff has not plausibly alleged a requisite injury............................... 14

    B.    Plaintiff Fails to Establish Article III Standing.................................................... 16

        1.    Plaintiff lacks individual standing to pursue his claim ............................ 16

        2.    Plaintiff lacks standing to seek injunctive relief on behalf of the putative class.......................................................................... 20

    C.    Plaintiff's Claims Are Barred by the Voluntary Payment Doctrine ................... 20

    D.    The Court Should Dismiss the Complaint with Prejudice .................................. 22

V.    CONCLUSION................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................8

*Balsam v. Fioriglio*,
   123 A.D.3d 750 (2d Dep't 2014) ....................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................8

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020)...........................................................................................20

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016).............................................................................20

*Byrd v. United States*,
   584 U.S. 395 (2018)..........................................................................................................8

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ................................................................................................8

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)................................................................................................8

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005)...........................................................................................17

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)........................................................................................7, 16

*Charles v. Color Factory, LLC*,
   No. 24-CV-322, 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024) ....................................*passim*

*Cruper-Weinmann v. Paris Baguette Am., Inc.*,
   235 F. Supp. 3d 570 (S.D.N.Y. 2017).........................................................................17, 18

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
   292 A.D.2d 25 (2nd Dep't 2002), *aff'd*, 100 N.Y.2d 525 (2003)...........................................21

*In re Edgewell Pers. Care Co. Litig.*,
   No. 16-CV-3371, 2018 WL 7858623 (E.D.N.Y. Sept. 4, 2018) ............................................20

*Frias v. City Winery N.Y., LLC*,
   No. 651284/2024, 2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024) .............................12, 14

*Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*,
   118 A.D.2d 532 (2d Dep't 1986) ...........................................................................................21

*Goldberg v. Enter. Rent-A-Car Co.*,
   14 A.D.3d 417 (1st Dep't 2005) .............................................................................................15

*Grant v. Cnty of Erie*,
   542 F. App'x 21 (2d Cir. 2013) ................................................................................................6

*Grossman v. MatchNet PLC*,
   10 A.D.3d 577 (1st Dep't 2004) .............................................................................................15

*Harty v. W. Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ......................................................................................17, 18, 19

*Hicks v. L'Oreal U.S.A., Inc.*,
   No. 22 Civ. 1989, 22 Civ. 3926, 2023 WL 6386847 (Sept. 30, 2023) .....................................8

*Kuzmich v. 50 Murray St. Acquisition LLC*,
   34 N.Y.3d 84 (2019) ..............................................................................................................15

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*,
   570 F.3d 471 (2d Cir. 2009) .....................................................................................................8

*Lucente v. IBM Corp.*,
   310 F.3d 243 (2d Cir. 2002)...................................................................................................22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................18

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
   19 F.4th 58 (2d. Cir. 2021) .....................................................................................................17

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)......................................................................................................8

*McKechnie v. Ortiz*,
   132 A.D.2d 472 (1st Dep't 1987), *aff'd*, 72 N.Y.2d 969 (1988) ...........................................13

*Murdaugh v. City of New York*,
   No. 10 Civ. 7218, 2011 WL 1991450 (S.D.N.Y. May 19, 2011)...........................................22

*Patterson v. Wildlife Conservation Society*,
   No. 24-cv-00171, ECF No. 26 (S.D.N.Y. May 22, 2024) ................................................19, 21

*Ross v. AXA Equitable Life Ins. Co.*,
    115 F. Supp. 3d 424 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017)......................19

*Shelton v. CIOX Health, LLC*,
    No. 1:17-CV-00808, 2018 WL 4211447 (E.D.N.Y. July 16, 2018)........................................21

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ..........................................................................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016)............................................................17, 18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................................................................17

*Whitehead v. Pine Haven Operating LLC*,
    222 A.D.3d 104 (3d Dep't 2023) .......................................................................................13

## Statutes

NY Arts & Cult. Aff. Law § 25 ............................................................................... *passim*

NY G.B.L. §§ 349, 394-c(9)(b) ...................................................................................15

## Other Authorities

3 Dollar Bill website, https://www.3dollarbillbk.com/rsvp.............................................16

Fed. R. Civ. P. 12(b)(1).............................................................................................1, 8

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 8, 22

N.Y. State Senate, May 18, 2021, Final Investigative Report:  Live Event
    Ticketing Practices, available at
    https://www.nysenate.gov/sites/default/files/article/attachment/nys_senate_igo
    _committee_report_-_live_event_ticketing_practices.pdf  ("Live Event
    Ticketing Practices Report" ...........................................................................1, 4, 13

New York Bill Jacket, 2018 S.B. 8501, Chapter 110 (JUSTIFICATION) ....................................4

U.S. Constitution Article III.................................................................................. *passim*

Defendant, Vivendi Ticketing, US, LLC d/b/a See Tickets USA, LLC, ("See Tickets"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff, Solomon Fortune's ("Plaintiff") Complaint (Dkt. 1) with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

This case is the latest in a slew of class actions wielding claims under Section 25.07(4) of New York's Arts & Cult. Aff. Law ("ACAL").  That provision was enacted on the heels of a Senate investigation focused on certain online ticket-sellers' practice of failing to disclose "hidden" fees.  Specifically, the concern was that online sellers were gradually increasing the total cost a consumer would pay throughout the purchase process.  For instance, some websites would provide only a base ticket price on the initial screen and add service fees only when the consumer was on the final checkout page, at which point the consumer could be timed out of a transaction if she did not purchase before the clock expired.  *See, e.g.*, *Charles v. Color Factory, LLC*, No. 24-CV-322, 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024).  The Legislative concern was that "[b]y not having a true picture of the price of a ticket until checkout, the customer lacks timely and valuable information to be able to make a fully informed purchase based on 'shopping around' among similar resellers." N.Y. State Senate, May 18, 2021, Final Investigative Report:  Live Event Ticketing Practices, available at https://www.nysenate.gov/sites/default/files/article/attachment/nys_senate_igo_committee_report_-_live_event_ticketing_practices.pdf  ("Live Event Ticketing Practices Report"), at 26.  And so, the Legislature enacted the ACAL to require disclosure of all ticket costs and service fees being charged.

The Plaintiffs' bar has now launched a new wave of litigation predicated upon an expansive and ungrounded interpretation of the ACAL.  As Plaintiff's own Complaint reveals, when he purchased his tickets through See Tickets, he immediately received "a true picture of the price of

a ticket."  Just see Figure 5.  As Plaintiff himself acknowledges, this is the very first screen users

see upon selecting an event.  On it, they are shown the ticket price *and* all related fees ***upfront***:



Indeed, consumers know, for example, for each "R.I.P. Express" ticket, its price is $65.00, there

is a service fee of $3.89, and a facility fee of $3.00.  No new fees are disclosed for the first time at

checkout.  The same fees simply reappear, multiplied by the number of tickets selected.

Consequently, the gravamen of Plaintiff's Complaint is not that fees are hidden from

purchasers during the purchase process, depriving them of the ability to "shop around."[1]  Nor could

it be because they are disclosed.  The crux of Plaintiff's Complaint is that ticket prices and fees

are broken down and the consumer is left to do basic arithmetic.  It is on that basis (that the ticket

price plus fees were not added together on a per-ticket basis for him) that Plaintiff asserts the "total

---

[1] On the contrary, Plaintiff himself purchased a second set of tickets at a later date despite acknowledging, at a minimum, he was shown all requisite fees at checkout.

cost of the ticket" is not disclosed. Plaintiff's efforts to sweep in companies such as See Tickets is predicated upon a tortured reading of the statute that is unmoored from the legislative history. Plaintiff's claims thus fail on the face of the complaint for at least three reasons:

*First*, Plaintiff cannot sufficiently allege a violation of ACAL § 25.07(4) because his own screenshots reveal See Tickets complied with the statute. See Tickets disclosed all ancillary fees immediately upon showing the ticket price for the first time and before the ticket was added to the cart for purchase. Nothing more is required. Plaintiff's novel theory that See Tickets was required to tally the base price and ancillary fee on a per-ticket basis from the outset is unsupported by the text of the statute and its legislative history.

Furthermore, even if Plaintiff could make out a violation under the ACAL, Plaintiff has failed to adequately allege an injury under the ACAL. Plaintiff does not assert that he was incapable of performing basic arithmetic (either in his head or through technological tools) such that he was deprived the ability to price shop. Nor does Plaintiff adequately allege there was another avenue to purchase tickets to his identified events. Plaintiff could not have been injured without an alternative purchasing option.

*Second*, Plaintiff has failed to allege Article III standing. Even if, as a matter of New York law, a bare procedural violation (i.e., requiring someone to perform simple arithmetic) qualifies as an injury, Plaintiff's claim would still be subject to dismissal because such a procedural or informational violation is not sufficient to confer Article III standing. Furthermore, Plaintiff's allegations, being relegated to past conduct, do not suffice to establishing standing to pursue injunctive relief.

*Lastly*, even if Plaintiff could state a claim for a violation of ACAL § 25.07(4) (he cannot), and he did have Article III standing to sue (he does not), his cause of action is independently barred

by the voluntary payment doctrine because Plaintiff freely decided to pay the fees not once, but twice.

## II.    BACKGROUND

### A.    STATUTORY BACKGROUND

Section 25 of the ACAL—referred to as New Yorks' "Ticket Law"—was enacted to protect consumers against unscrupulous ticket selling.  In 2022, Section 25.07(4) was updated to increase ticket price transparency—specifically, to prevent ticket sellers from listing one price initially and then surprising the customer with undisclosed fees late in the purchase process, thereby increasing the ticket price, in a last-minute "gotcha" moment.  New York Bill Jacket, 2018 S.B. 8501, Ch. 110 (JUSTIFICATION); *id.* at SUMMARY OF PROVISIONS.  To that end, Section 25.07(4) requires the following:

> Every operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets **shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser.  Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase.**

ACAL § 25.07(4) (emphasis added).  It further provides, "[t]he price of the ticket shall not increase during the purchase process, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor."  *Id.*  The goal of the 2022 amendments was to enable customers to "make a fully informed purchase based on 'shopping around' among similar resellers." Live Event Ticketing Practices Report at 26.

### B.    FACTUAL BACKGROUND

See Tickets operates the website, SeeTickets.us, through which customers may purchase tickets to various entertainment events.  Compl. ¶¶ 8, 36.  Plaintiff alleges that he twice purchased event tickets from SeeTickets.us.  First, on June 9, 2023, Plaintiff purchased one ticket to a "DJ set performing at a venue called 3 Dollar Bill, on June 11, 2023." Compl. ¶ 7.  Second, on October 21, 2023, he purchased one ticket for "a dance party with live music at a venue called 9 Bob Note" taking place that same day. Compl. ¶ 7.  In support of these allegations, Plaintiff submits various screenshots not for the venues where he actually purchased tickets (3 Dollar Bill and 9 Bob Note, Compl. ¶ 7), but from unrelated venues he alleges provided a "substantially similar" "transaction flow process" to what he viewed when he made his purchases.[2] Compl. ¶ 7.  Plaintiff goes on to allege that based on these purchase processes the total ticket prices are not "disclosed upfront at the start of the purchase process." Compl. ¶¶ 41-42; *see also id.* ¶¶ 15, 37.  He further alleges that he and others "relied" on See Tickets' "representations that the cost of the tickets did not include fees in choosing to purchase their tickets" and that he was "harmed by not having the total cost of his tickets disclosed upfront at the start of the purchase process."  Compl. ¶¶ 42-43.

Notwithstanding these assertions, Plaintiff's own allegations reveal that the purchase process he claims he experienced in fact disclosed the total price of the transaction, including breaking down the base ticket price ("item price") separately from any ancillary fees ("srv fee" and "fac fee") from the very beginning of the purchase process.  Compl. ¶ 10 ("Defendant quotes an item price ('Item Price') and a 'SRV FEE' and 'FAC FEE,' neither of which are defined.").  And the Complaint's own screenshots also reveal that the ticket price plus any ancillary fees are

---

[2] As Plaintiff's own complaint reveals, there's a large number of purchasing flows, which would create real issues certifying a nationwide class.

disclosed from the outset.[3] Compl. Figs. 2, 4, 5, & 11.  By way of example, Figure 5 shows each:



Compl. Fig. 5.  And, as Plaintiff acknowledges, on this same screen, after a purchaser clicks "ADD TO CART," the "TOTAL DUE" for all tickets is displayed.  *See id.* (listing "Total Due" under "CART").  Though Plaintiff does not offer a screenshot that depicts this step, we produce the missing link in the screenshot below.[4]  After selecting "2" as the quantity for "R.I.P. Express" (and "add to cart"), the gray section titled "Cart" shows "Item Total" with a total cost of $130.00, "Srv Fee" with a total cost of $7.78, and "Fac Fee" with a total cost of $6.00.  It then adds all of this up, plus tax of $12.76, and provides the "Total Due" as $156.54:

---

[3] The Court need not accept Plaintiff's conclusory allegations that are contradicted by the Complaint's more specific allegations. *Grant v. Cnty of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) ("This Circuit has recognized an exception to the rule that a court must accept all factual assertions as true when attenuated allegations supporting the claim are contradicted by more specific allegations in the Complaint or when a claim is based on wholly conclusory and inconsistent allegations.") (citation omitted).
[4] As explained further in the accompanying request for judicial notice, this Court may consider the missing step in the purchasing process for the October 31, 2024 Blood Manor event because Plaintiff has incorporated it by reference into the Complaint.



What is more, Plaintiff's *actual* experience, which is not reflected in his screenshots but is incorporated into the Complaint by reference,[5] shows that once a customer chooses the number of tickets and selects CHECKOUT, the very arithmetic Plaintiff claims is lacking is completed. That is, once a customer chooses the number of tickets to purchase in the dropdown menu and adds it to the cart or selects checkout (depending on the flow), the website calculates the tallied total, which is immediately displayed on the next screen without requiring scrolling down on the page.

---

[5] In considering a motion to dismiss, a court may consider documents incorporated by reference in the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Here, as further detailed in the accompanying notice of incorporated exhibits and request for judicial notice, the purchase process for Plaintiff's actual tickets is incorporated by reference because the Complaint "relies heavily upon" them and they are "integral to the complaint." *Id.* (citation omitted); *see* Compl. ¶¶ 7, 41-43 (describing two tickets Plaintiff purchased and the harm he purportedly suffered, which form the basis of his single claim). This process is included as exhibits 1-2 to the Veeh declaration.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678. *See also LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009) (a court need not "accept as true legal conclusions couched as factual allegations"). Accordingly, dismissal is appropriate where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"Article III of the U.S. Constitution 'confines the federal judicial power to the resolution of 'Cases' and 'Controversies.''" *Hicks v. L'Oreal U.S.A., Inc.*, No. 22 Civ. 1989, 22 Civ. 3926, 2023 WL 6386847, at *6 (Sept. 30, 2023) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When [a] Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it[,]….[the court must] determine whether the Pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal quotations and citation omitted). Because standing "is a 'jurisdictional' requirement…[it] 'must be assessed before reaching the merits.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Byrd v. United States*, 584 U.S. 395, 410–11 (2018)).

8

## IV.    ARGUMENT

### A.    Plaintiff Has Not Plausibly Alleged a Violation of Section 25.07(4).

Plaintiff's ACAL claim fails for at least two reasons.  First, Plaintiff does not allege (and cannot allege) See Tickets failed to disclose all fees upfront.  On the contrary, the Complaint itself discloses that See Tickets does just that.  All ticket prices and fees are disclosed immediately. Second, Plaintiff has not plausibly alleged injury.  Even if Plaintiff's interpretation of ACAL were proper, Plaintiff does not allege he was deprived of the ability to shop around.  In fact, he does not even plausibly allege there were other ticket purchasing options available.  And the mere fact of having to perform arithmetic in one's head does not constitute an injury under the ACAL.

### 1.    Plaintiff has not pled a statutory violation because the Complaint itself discloses compliance.

Plaintiff alleges that See Tickets "violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the 'total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket … prior to the ticket being for purchase' on the ticket selection screens depicted in Figures 2, 4, 5 and 11 of this Complaint."  Compl. ¶ 37.  Plaintiff is wrong.  The very Figures he points to as evidence See Tickets violated the statute demonstrates the opposite; that See Tickets complied with the ACAL requirements.

We begin, as New York law requires, with the plain text of the statute.  *See Balsam v. Fioriglio*, 123 A.D.3d 750, 751, (2d Dep't 2014) ("Statutory interpretation begins with the plain language of the statute; the clearest indicator of legislative intent is the statutory text. . . . '[T]he starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof.'") (citation omitted).  ACAL § 25.07(4) provides that "[e]very … ticket reseller, or platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose

in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser.  Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase."  It further states, "[t]he price of the ticket shall not increase during the purchase process, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor."  ACAL § 25.07(4).

Here, Plaintiff's own images demonstrate that See Tickets complied with the statute by displaying all fees, as well as the ticket price itself.  As Plaintiff acknowledges, Figures 2, 4, and 5 reflect the ***first page*** a purchaser sees after selecting an event on the See Tickets website.  *See* Compl. ¶ 10 ("After a user selects an event and particular day, the purchase process begins and users are prompted to select their ticket type and quantity.  *See* Figure 2."), *id.* at ¶ 13.  Each of those Figures (as well as Figure 11) displays the base price for the ticket as well as ancillary fees, which are clearly and conspicuously identified, before the ticket is selected for purchase.  Compl. Figs. 2, 4, 5, & 11.  By way of example, below is Figure 5.  The yellow highlights show the ticket price and the green highlights show the service and facility fees[6]:

---

[6] Further, as noted above (*see supra* Section II.B), under the flows identified by Plaintiff in Figures 4 and 5, when the ticket quantity is selected, the "TOTAL DUE" is displayed along with bucketed totals by ticket price and fee.



Compl. Fig. 5.  Furthermore, under either scenario (represented by Figure 2 or Figures 4 or 5), no

new fees are added during the checkout process.  Plaintiff opaquely suggests otherwise, claiming

by the time a customer proceeds to the checkout screen that "the same fees have now ballooned to

$11.67 and $9.00, respectively."  Compl. ¶¶ 20, 38, 39.  But he is simply wrong.  The fees have

not changed.  They are just multiplied by three (for the number of tickets selected in the example

provided in Figure 9).

 Plaintiff also suggests there's some confusion about whether the fees disclosed are "applied

on a per-transaction or per-ticket basis, as depicted in Figures 2, 4, 5, and 11."  Compl. ¶ 38.  That

contention is nonsensical.  In each of the Figures, ticket price and fees are listed in the very same

row.  And Plaintiff does not contend there is any confusion regarding whether the ticket price (i.e.,

"item price") is on a per-ticket basis.  What's more, at the end of the row is a drop down menu that

allows the customer to select "quantity."  It defies logic to suggest, in the absence of some contrary

indication, that one column in a row (i.e., item/ticket price) would represent different units than other columns in that same row (i.e., fees), particularly where all columns are tethered to the "quantity" drop down menu.[7]  See Tickets thus readily disclosed all ticket prices and fees at the outset.

In so doing, See Tickets has provided even greater transparency than City Winery whose parallel ACAL claims were dismissed at the pleading stage.  *See Frias v. City Winery N.Y., LLC,* No. 651284/2024, 2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024).  There, the very first page customers viewed displayed the date and time of the event along with "a corresponding list of ticket prices, *without reference to any fees*, for that event."  *Id.* at *1 (emphasis added).  Even after customers were "taken to the next page of the website to 'Select Your Tickets,'" they could "hover[] over a particular seat" to "see a ticket price for that specific seat," but "[a]gain, *no ticket fee [wa]s listed on the website*."  *Id* (emphasis added).  Nonetheless, the Court dismissed Plaintiff's claims because City Winery "plainly disclosed to customers the total cost and fees for a ticket 'prior to the ticket being selected for purchase.'"  *Id.* at *4.  Here, Plaintiff's own Complaint confirms that all fees are displayed on the initial ticketing screen—even earlier than occurred during the purchasing process in *City Winery.*

Nonetheless, Plaintiff asserts See Tickets violated the statute because it does not display on that initial screen "the total cost of each ticket."  Compl. ¶ 14; *see also id.* at ¶ 37.  But, of course, it does:  all ticket prices and fees are plainly disclosed upfront.  Plaintiff's true gripe, which he candidly relays later in the Complaint, is purely a formalistic one:  that the three sets of numbers (e.g., $65.00, $3.89, and $3.00) were not added up for him.  But nothing in the text of the ACAL imposes such a requirement, *see* § 25.07(4), nor is there any reason the statute would.  Indeed, the

---

[7] Plaintiff also offers vague allegations regarding the nature of the fees.  Compl. ¶ 11.  However, Plaintiff does not state any basis by which these allegations would constitute a violation of the ACAL.

law does not presume—and it would defy common sense—that those making a purchase online—with a computer—cannot perform this basic tally or use a calculator on their device to do the same. Simply stated, nothing about the statutory text suggests the New York State Legislature intended to penalize companies that "clear[ly] and conspicuous[ly]" disclose all fees at the outset.  ACAL 25.07(4).

On the contrary, the purpose of the legislation was to ensure "[t]he price of the ticket [does] not increase during the purchase process."  *Id.*  This is confirmed by the legislative history.  The 2022 amendment to the ACAL was driven by concerns with purchasers "not having a true picture of the price of a ticket until checkout," which deprives the customer of the "timely and valuable information [needed] … to make a fully informed purchase based on 'shopping around' among similar resellers."  Live Event Ticketing Practices Report at 26.  Because, as Plaintiff's own allegations reveal, purchasers are provided all ticket prices and applicable fees upfront (and before they are "on the clock"), purchasers have the "timely and valuable information" they need to "shop[] around."  *Id.*

Plaintiff's primary, if not exclusive, authority to the contrary rests upon a letter written by Senator James Skoufis.  Compl. ¶ 24.  That letter, filed in 2024 in another ACAL class action by the same Plaintiffs' lawyers here, expressed concern that purchasers might have to do "math in their heads before securing their preferred tickets."  Compl. ¶ 24 (citing *Charles v. Color Factory*, Case No. 1:24-cv-00322, ECF No. 21 at 1-2 (S.D.N.Y. Apr. 5, 2024)).  But the letter is no authority at all.  Under New York law, "[t]he postenactment statements of a member of the Legislature, even one who sponsored the law in question, are irrelevant as to the law's meaning and intent." *McKechnie v. Ortiz*, 132 A.D.2d 472, 475 (1st Dep't 1987), *aff'd*, 72 N.Y.2d 969 (1988); *see also Whitehead v. Pine Haven Operating LLC*, 222 A.D.3d 104, 108 (3d Dep't 2023) (rejecting post-

13

enactment statements from the bill's sponsor).  In fact, the Court in *Color Factory* itself did not even cite, or otherwise rely on, the letter in its ruling.  *Charles*, 2024 WL 1693236, at *1.  Further, when Plaintiff's counsel deployed the same gambit in *City Winery*, Judge Chan rejected the letter "insofar as [Senator Skoufis'] interpretations are at odds with the plain, unambiguous text of the statute."  *City Winery N.Y., LLC*, 2024 WL 4495177, at *4.  So too here.  The letter cannot overcome the plain text of the statute and the legislative history, both of which demonstrate by fully disclosing all ticket prices and fees immediately, See Tickets affords purchasers the ability to "shop around."

### 2. Plaintiff has not plausibly alleged a requisite injury.

Setting aside that See Tickets has not violated ACAL § 25.07(4), Plaintiff's claim fails because he has not alleged any violation that caused him an injury.  Under the ACAL, an individual may bring a private right of action if he or she was "injured by reason of a violation of this article." ACAL § 25.33.  Plaintiff has not alleged an injury by reason of a violation of the ACAL.

Plaintiff advances two injury theories, both of which fail.  ***First***, he contends he "was harmed by paying … unlawfully applied service charges" that were "not disclosed to Plaintiff at the beginning of the purchase process."  Compl. ¶ 41.  Stated otherwise, Plaintiff posits that inadequate disclosure itself constitutes an injury under the ACAL.  But that would obviate the inclusion of the word "injury" under the statute.  Drafters could have just as easily, and more appropriately, stated anyone who has "experienced" or "been subject to" a violation of the ACAL is entitled to recovery.  Plaintiff's interpretation is particularly misguided given the statute allows one to "recover his or her actual damages or fifty dollars, whichever is greater, or both such actions."  ACAL § 25.33.  That is, the statute presumes plaintiffs will have suffered "actual damages."

This textualist reading is supported by analogous statutes.  Though little caselaw exists

concerning the interpretation of ACAL § 25.33, the language in that provision parallels the private right of action language under New York's General Business Law. Parallel language warrants parallel interpretation. *See Kuzmich v. 50 Murray St. Acquisition LLC*, 34 N.Y.3d 84, 104 (2019) (statute with "substantively identical language" to a prior statute warrants application of decisional law for the prior statute); *see also Grossman v. MatchNet PLC*, 10 A.D.3d 577, 577-578 (1st Dep't 2004) (applying G.B.L. § 349 injury case law to G.B.L. § 394-c(9)(b) concerning dating services regulation). To that end, New York courts have recognized GBL claims must be dismissed where they "set forth deception as both act and injury." *Small v. Lorillard Tobacco Co*., 94 N.Y.2d 43, 56 (1999). So too then as to claims under the ACAL. Inadequate disclosure cannot, in and of itself, constitute injury. *See also, e.g.*, *Goldberg v. Enter. Rent-A-Car Co*., 14 A.D.3d 417, 417 (1st Dep't 2005).

**Second**, Plaintiff alleges that "[b]y not knowing the total cost of his tickets before" he selected them for purchase, he "could not shop around for tickets from other ticket sellers like EventBrite, or Tick Pick, just to name a few." Compl. ¶ 42. As a result, Plaintiff contends, he "had no way of knowing whether he was getting the best deal his money could buy." *Id.*

Plaintiff is wrong on multiple fronts. As discussed, because See Tickets discloses all fees upfront, consumers *do* know the cost of tickets before they are selected for purchase. *See supra* Sections II.B, IV.A.1. That is particularly true for Plaintiff who alleges he purchased one ticket at a time. Under that scenario, he could not have experienced any confusion as to whether the fee prices were on "a per-transaction or per-ticket basis." Compl. ¶ 38. They would be the same. Likewise, Plaintiff could not have been injured to the extent his purchase occurred through processes laid out in Figures 4 or 5. Compl. ¶ 13. If acquired through those flows, Plaintiff received the total price for his ticket (i.e., the full per-ticket price) when he added the single ticket

to his cart (which was before checkout).  Further, even if Plaintiff had purchased more than one ticket, the only way he could have been precluded from "shopping around" is if he was incapable of adding the fully disclosed ticket price and fees.  But Plaintiff does not allege he cannot perform basic arithmetic.  Finally, for Plaintiff to have been injured, it would necessarily have to be the case that there were different, and cheaper, avenues for purchasing tickets to the shows he attended. Though Plaintiff alleges he was denied the ability to shop around for tickets to the events he attended, he offers no plausible allegations that anyone other than See Tickets sold tickets for the events he attended (at 3 Dollar Bill and 9 Bob Note).  Nor can there be any, as just a passing look at the 3 Dollar Bill website (which also sells tickets to events at 9 Bob Note) demonstrates there is no alternative.[8]  Tickets are sold exclusively through the 3 Dollar Bill website, using See Ticket's backend infrastructure.

**B.    Plaintiff Fails to Establish Article III Standing.**

Even if Plaintiff could establish an injury under the ACAL simply by virtue of inadequate disclosures (without any accompanying harm), his claim would still fail for lack of Article III standing.  First, Plaintiff has pleaded no more than a bare procedural or informational violation, without any downstream consequences, from receiving the item price and ancillary fees listed separately initially, rather than listed separately and tallied together.  Second, Plaintiff lacks standing to pursue injunctive relief because, at most, he has alleged only a past harm.

**1.    Plaintiff lacks individual standing to pursue his claim.**

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

---

[8] *See* https://www.3dollarbillbk.com/rsvp.  Having alleged that he purchased tickets to 3 Dollar Bill and 9 Bob Note events through See Tickets, Plaintiff has necessarily incorporated the See Tickets-supported, event-purchasing portions of the 3 Dollar Bill website into the Complaint. *See Chambers*, 282 F.3d at 152; *see also supra* n.5.

defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted).  "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021); *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d. Cir. 2021) (noting *TransUnion's* [n]o concrete harm; no standing" "leaves little room for interpretation").  In a class action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class." C*ent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quotation omitted).

Further, a plaintiff "cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm."  *Maddox*, 19 F.4th at 64.  A "bare procedural violation of a statutory directive, on its own, does not establish an injury in fact." *Cruper-Weinmann v. Paris Baguette Am., Inc.*, 235 F. Supp. 3d 570, 573-74 (S.D.N.Y. 2017) (cleaned up, citation omitted); *see also TransUnion*, 594 U.S. at 426 ("[A] statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . .").  A plaintiff "must show that he has an interest in using the information beyond bringing his lawsuit."  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (no standing for informational injury where there were no allegations of "downstream consequences from failing to receive the required information") (cleaned up, citation omitted).

Accordingly, "the injury-in-fact requirement requires a plaintiff to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016),

*as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A concrete injury must be '*de facto*,' that is, it must actually exist," i.e. an injury must be "real, and not abstract." *Id.* at 340 (cleaned up, citation omitted). The particularization and concreteness requirements are no less rigorous "in the context of a statutory violation." *Id.* 339–41. And a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341. Consequently, a plaintiff cannot allege a "bare procedural violation, divorced from any concrete harm," to satisfy standing. *Id.* Here, even if true, Plaintiff's allegations—that he suffered an injury under state law because See Tickets failed to provide the "total cost of each ticket" (i.e., add up the ticket price and fees for him) (Compl. ¶ 14)—constitute nothing more than a "bare procedural violation, divorced from any concrete harm." *Spokeo*, 578 U.S. at 341; *see also Cruper-Weinmann*, 235 F. Supp. 3d at 573-74 ("It is not the case 'that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'") (citing *Spokeo* 578 U.S. at 341).

    *First*, requiring an individual to tally or divide numbers either by hand or with a calculator, is not a cognizable injury, especially where, as here, Plaintiff has not alleged he is unable to do math. *See generally*, Compl.; *see also Spokeo*, 578 U.S. at 341. *Second*, Plaintiff has failed to allege any "downstream consequences" by See Tickets failure to do this math for him. *Harty*, 28 F.4th at 444. For example, he does not allege he could not do this arithmetic himself or that he would not have purchased the tickets had this basic addition been done before the second page. *See generally*, Compl. *Third*, Plaintiff does not plausibly allege he could have purchased these tickets elsewhere, let alone for a cheaper price. *Id*. *Fourth*, Plaintiff's illusory harm is undermined by the fact that he returned to See Tickets and purchased another ticket using the exact same

purchase flow.  Compl. ¶¶ 7, 41.  Plaintiff is thus left with nothing more than an "abstract interest in accurate information from" See Tickets.  *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017).  But that "does not constitute a 'concrete and particularized' injury sufficient to confer a right to sue in federal court."  *Id.*; *see also Harty*, 28 F.4th at 444 (holding "downstream consequences" require more than just an interest in using the information to bring a lawsuit).

In an effort to evade these standing problems, Plaintiff attempts to characterize his inability or refusal to do basic math as the same thing as hiding or delaying fee disclosure.  For example, Plaintiff generally alleges that he was "harmed by paying these unlawfully applied service charges" and "[b]ecause the total cost of the tickets were not disclosed to Plaintiff at the beginning of the purchase process, the resulting service charges that were applied were unlawful." Compl. ¶ 41.  But where other courts analyzing Section 25.07(4) have found standing for allegations like Plaintiff's—that he was "harmed by paying these unlawfully applied service charges" (*id.*)—the facts have been distinct.  In those cases, defendants *failed to disclose the fees from the outset or even at all*.  *See Charles, LLC*, 2024 WL 1693236, at *1 (fees never separately disclosed); *Patterson v. Wildlife Conservation Society*, No. 24-cv-00171, ECF No. 26 (S.D.N.Y. May 22, 2024) (fees not disclosed first time ticket price was displayed).  In other words, the defendants engaged in the very sales tactics that the ACAL was designed to prevent:  they listed an initial ticket price only to have the total increase during the purchasing process.  *See Color Factory*, 2024 WL 1693236, at *1; *Patterson*, No. 24-cv-00171, ECF No. 26.  Here, by contrast, Plaintiff's own images reveal that the fees were disclosed from the outset.[9]  Compl. ¶ 10, Figs. 2, 4, 5, & 11.

---

[9] Moreover, even if the ACAL requires tallying the tickets and fees to provide on a per-ticket basis (nothing suggests that it does), Plaintiff cannot allege he suffered an actual harm from this alleged failing because See Tickets in fact did the arithmetic he alleges he needed. Specifically, once Plaintiff selected the number of tickets to purchase and added them to his cart, See Tickets tallied the ticket price and fees and displayed the sum of those two numbers, as

2.      **Plaintiff lacks standing to seek injunctive relief on behalf of the putative class.**

Whatever may be said about Plaintiff's ability to pursue claims for monetary damages, at a minimum, he has no standing to pursue claims for injunctive relief. "To satisfy the injury requirement when seeking injunctive relief, a plaintiff cannot rely on a past injury alone." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016). Accordingly, "past purchasers of a consumer product who claim to be deceived by that product's packaging … have, at most, alleged a past harm." *Berni v. Barilla S.p.A.,* 964 F.3d 141, 147 (2d Cir. 2020). This is because such purchasers, even if they purchase the product again, "will not again be under the illusion" that the sunscreen SPF is as stated on the label. *Id.* at 148. Accordingly, "it is insufficient for a plaintiff to allege that she will purchase the product in the future on the condition that she can be assured that it is no longer deceptive." *In re Edgewell Pers. Care Co. Litig.,* No. 16-CV-3371, 2018 WL 7858623, at *16 (E.D.N.Y. Sept. 4, 2018). Here, Plaintiff's request for injunctive relief fails because he offers nothing but conclusory allegations regarding prospective harm. Comp. ¶ 45. Plaintiff's allegations are instead predicated entirely on past harm, namely two ticket purchases in 2023. Compl. ¶ 7. That Plaintiff's counsel is even professing to seek injunctive relief in this Complaint is surprising given that they have affirmatively disavowed such relief in prior, parallel litigation under the ACAL. *See Color Factory, LLC*, 2024 WL 1693236, at *2 n.3. Plaintiff's request for injunctive relief must be dismissed for lack of Article III standing.

C.      **Plaintiff's Claims Are Barred by the Voluntary Payment Doctrine.**

Should the Court determine that Plaintiff's allegations are adequately alleged under the

---

well as the number of tickets purchased. *See supra* Decl. Exs. 1-2. Thus, by the second page, Plaintiff had all the information he needed to "shop around" at these other websites that Plaintiff does not even allege were selling tickets to the event for which he bought tickets from See Tickets.

ACAL and/or Article III, his claim should still be dismissed pursuant to the voluntary payment doctrine. "New York embraces the doctrine, 'that a voluntary payment [of an improper charge] made with full knowledge of the facts cannot be recovered because it was made pursuant to a mistake of law.'" *Shelton v. CIOX Health, LLC*, No. 1:17-CV-00808, 2018 WL 4211447, at *2 (E.D.N.Y. July 16, 2018) (quoting *Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 535 (2d Dep't 1986) (applying voluntary payment doctrine and granting motion to dismiss). The voluntary payment doctrine applies to both statutory and common law claims. *Id.* "When a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 28 (2nd Dep't 2002), *aff'd*, 100 N.Y.2d 525 (2003); *see also Shelton*, 2018 WL 4211447, at *2 (same).

Here, despite alleging See Tickets did not sufficiently disclose ticket cost, Plaintiff voluntarily paid for tickets using See Tickets' website twice. Compl. ¶¶ 7, 14-15, 18. In other words, even under Plaintiff's own theory, he learned at the time of checkout the actual cost of the tickets. Yet, Plaintiff did not protest upon learning that information. He apparently accepted the amount and attended the event. In fact, Plaintiff did it *again*, purchasing tickets through the very same portal. Compl. ¶ 7.

Though courts have rejected the voluntary payment doctrine when asserted in this context, the claims in those cases were "predicated on a lack of full disclosure by a defendant." That is, the defendants failed to disclose the ancillary fees the first time the ticket price was listed, or even at all. *See*, *e.g.*, *Color Factory*, 2024 WL 1693236, at *4 (fees never separately disclosed) (citation omitted); *Patterson*, No. 24-cv-00171, ECF No. 26 (fees not initially disclosed). But, as previously detailed, See Tickets did fully disclose the ticket price and ancillary fees from the first time the

ticket price was listed. *See supra* Sections II.B, IV.A.1. Thus, Plaintiff cannot hide behind a purported "lack of full disclosure" to obviate his decision to *twice* voluntarily pay for tickets using See Tickets' website. *See* Compl. ¶ 7.

    **D.    The Court Should Dismiss the Complaint with Prejudice.**

Although leave to amend a complaint should be freely given, "leave to amend need not be granted where the proposed amendment is futile." *Murdaugh v. City of New York*, No. 10 Civ. 7218, 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). Here, the Complaint's own allegations reveal that See Tickets complied with Section 25.07(4)'s requirements. (*See supra* Sections II.B, IV.A.1.) And Plaintiff's theory is simply contrary to the text and purpose of the statute. There is no creative pleading that can get around this fatal flaw. Accordingly, leave to amend would be futile and the Court should dismiss the Complaint with prejudice.

**V.    CONCLUSION**

For the foregoing reasons, See Tickets respectfully requests the Court dismiss the Complaint with prejudice.

Dated: New York, New York
        February 28, 2025

                                  Respectfully submitted,

                                  Orrick, Herrington & Sutcliffe LLP

                                  By: */s/ Marc R. Shapiro*
                                            Marc R. Shapiro
                                      (State Bar No. 4403606)
                                      mrshapiro@orrick.com

                                  51 West 52nd Street
                                  New York, NY  10019-6142
                                  +1 212 506 5000
                                  +1 212 506 5151

                                  Attorneys for Defendant
                                      VIVENDI TICKETING US, LLC D/B/A
                                      SEE TICKETS USA, LLC,

23

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss

Complaint contains 6,808 words, excluding the portions exempted by Local Civil Rule 7.1(c).

This Motion this complies with the word-count limitations under Local Rule 7.1 because the

word count does not exceed the 8,750 words permitted under the Rule.

By: */s/ Marc R. Shapiro*
Marc R. Shapiro