**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOLOMON FORTUNE, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>VIVENDI TICKETING US, LLC D/B/A SEE TICKETS USA, LLC<br><br>       Defendant. | Civil Action No. 1:24-cv-08415-JPC<br><br>Hon. John P. Cronan |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

Dated: March 31, 2025

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
1330 Avenue of Americas, 32 Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (*pro hac vice forthcoming*)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94595
Tel: (925) 300-4455
Fax: (925) 407-2700
E-Mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ................................................................................................ 1

I.  THE COMPLAINT AND THE FACTS INCORPORATED BY
    REFERENCE.................................................................................................. 5

    A.  The Purchase Flow Plaintiff Saw.......................................................... 5

    B.  The Purchase Flow Some Unnamed Putative Class Members Saw ........ 8

ARGUMENT ................................................................................................... 12

II. SEE TICKETS VIOLATED ACAL § 25.07(4) BY FAILING TO
    "DISCLOSE THE TOTAL COST OF THE TICKET … PRIOR TO THE
    TICKET BEING SELECTED FOR PURCHASE."........................................ 12

    A.  ACAL § 25.07(4) Requires Adding Up Costs To Disclose "Total
        Cost" of Each Ticket........................................................................... 12

    B.  ACAL  § 25.07(4) Requires The Total Cost Disclosure To Occur
        On The "Ticket Listing" Page, "Prior To The Ticket Being
        Selected For Purchase." ...................................................................... 14

        1.  The Purchase Flow Plaintiff Saw Did Not Disclose The
            Total Cost Before the Ticket Was Selected. ............................... 14

        2.  The Other Purchase Flow Unnamed Class Members Saw
            Did Not Disclose The Total Cost Before the Ticket Was
            Selected. .................................................................................. 16

    C.  The Law Requires The "Total Cost" For Each Ticket........................... 21

III. PLAINTIFF SUFFERED INJURIES TO HIS POCKETBOOK ...................... 22

    A.  Plaintiff Overpaid For His Tickets....................................................... 22

    B.  Plaintiff Suffered A Cognizable Informational Injury........................... 25

IV. THE VOLUNTARY PAYMENT DOCTRINE IS INAPPLICABLE
    BECAUSE PLAINTIFF ALLEGES A LACK OF FULL DISCLOSURE...... 27

CONCLUSION................................................................................................. 30

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berryman v. Reading Int'l, Inc*
   2025 WL 315403 (S.D.N.Y. Jan. 28, 2025) ....................................................Passim

*Cammayo v. 1 AND 8, Inc.*,
   2024 WL 5170481 (N.Y. Sup. Ct. Dec. 09, 2024) ............................................... 5, 28

*Carovillano v. Sirius XM Radio Inc.*,
   715 F. Supp. 3d 562 (S.D.N.Y. 2024) ...............................................Passim

*Charles v. Color Factory, LLC*,
   2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024) ...............................................Passim

*CIT Bank N.A. v. Schiffman*,
   36 N.Y.3d 550 (2021) ........................................................................... 18, 22

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021) ................................................................. 24

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
   292 A.D.2d 25 (2nd Dep't 2002)........................................................................ 30

*Duncan v. Walker*,
   533 U.S. 167 (2001) ............................................................................................ 15

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998) .............................................................................................. 26

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ................................................................................. 13

*Frias v. City Winery New York, LLC*,
   2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024)....................................... 13, 20, 21

*Guthrie v. Rainbow Fencing Inc.*,
   113 F.4th 300 (2d Cir. 2024) .............................................................................. 26

*Mary Jo C. v. New York State & Loc. Ret. Sys.*,
   707 F.3d 144 (2d Cir. 2013) ............................................................................... 15

*Matter of Walsh v N.Y. State Comptroller*,
   34 N.Y. 3d 520 (2019)........................................................................................ 12

*Presson v. Alamo Intermediate II Holdings, LLC*,
 2025 WL 692123 (S.D.N.Y. Mar. 4, 2025)......................................................................Passim

*Ross v. AXA Equitable Life Ins. Co.*,
 115 F. Supp. 3d 424 (S.D.N.Y. 2015) ...................................................................................... 26

*Shelton v. CIOX Health, LLC*,
 2018 WL 4211447 (E.D.N.Y. July 16, 2018)........................................................................... 30

*Spagnola v. Chubb Corp.*,
 574 F.3d 64 (2d Cir. 2009) ............................................................................................... 29, 30

*Summerville v. Gotham Comedy Found., Inc.*,
 2025 WL 588644 (S.D.N.Y. Feb. 24, 2025) ...................................................................Passim

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ................................................................................................................ 26

*United States v. Jones*,
 965 F.3d 190 (2d Cir. 2020) ................................................................................................... 12

*Vasell v. SeatGeek, Inc.*,
 2025 WL 240912 (E.D.N.Y. Jan. 17, 2025)....................................................................Passim

## STATUTES

N.Y. Gen. Bus. Law § 349..................................................................................................... 23

New York Arts & Cultural Affairs Law ("ACAL") § 25.07(4) ...........................................Passim

## OTHER AUTHORITIES

New York Sponsors Memorandum, 2022 S.B. 9461...........................................................2, 4, 21

## INTRODUCTION

Defendant Vivendi Ticketing US, LLC ("See Tickets" or "Defendant") spills considerable ink discussing what cost disclosures it chose to make and what wary consumers could have figured out, but this all misses the mark. This case is not about what See Tickets did disclose, but what it *didn't*. See Tickets didn't disclose "the total cost of a ticket … at the earliest stage of a transaction, *i.e.*, 'when tickets are first viewed on a website.'" *Summerville v. Gotham Comedy Found., Inc.*, --- F. Supp. 3d.----, No. 24-CV-01484 (ER), 2025 WL 588644, at *4 (S.D.N.Y. Feb. 24, 2025). And so, it violated the New York Arts & Cultural Affairs Law ("ACAL") § 25.07(4).

Contrary to See Tickets's condescending assertions, Plaintiff Solomon Fortune's injury isn't that he's too stupid to "perform basic arithmetic." ECF No. 14 ("MTD") at 16. Mr. Fortune's injury is that "by not having the total cost of his tickets disclosed upfront … Defendant was able to reduce price competition and cause consumers like Plaintiff to overpay." Compl., ¶ 42. By giving consumers piece-meal disclosures instead of the "all-in price," See Tickets reduced consumers' perceived sticker shock. Harvard Business Review, *Upgrade Your Pricing Strategy to Match Consumer Behavior*, https://hbr.org/2020/05/upgrade-your-pricing-strategy-to-match-consumer-behavior (May 28, 2020) (noting that "twice as many consumers" will buy a product if it is listed as "$9.99 + $7.00" than if exactly the same product is listed as "$16.99").

Citing no authority, See Tickets argues ACAL § 25.07(4) does not require it to add up the components of the total cost. But it does. By its plain terms, the ACAL § 25.07(4) says See Tickets "shall disclose the <u>total</u> cost of the ticket, inclusive of all ancillary fees."  The word "total" means "the product of addition." https://www.merriam-webster.com/dictionary/total. And because the total is "inclusive of *all ancillary fees*," Defendant's fees need to be included in this

one, whole number. ACAL § 25.07(4) then goes on to warn that "[d]isclosures of subtotals …
and any other component of the total … may not be presented more prominently [than] the
total." By hiding the "total cost," and only showing the "components of the total," See Tickets
necessarily violates this provision as well.

See Tickets claims the New York State Senate, *Final Investigative Report: Live Event
Ticketing Practices* ("the Senate Report") supports its claim that the total cost of a ticket need not
be disclosed. MTD at 13. Not in this universe. The Report highlights that, before the law was
passed, See Tickets's competitors actually "offered support for ***all-in pricing*** models," but
"stressed the ***competitive disadvantages*** compared to other platforms [like See Tickets] that did
not display the ***total price of the tickets at the onset of a transaction***." Senate Report at 26-27,
https://www.nysenate.gov/sites/default/files/article/attachment/nys_senate_igo_committee_repor
t_-_live_event_ticketing_practices.pdf (emphasis added). So, both See Ticket's competitors *and*
Senate Investigative Committee "strongly recommended" making "all-in pricing … an industry-
wide standard," so that "the ***total price of a ticket***, as well as the portion representing a service
charge or fee, should be disclosed to the purchaser at the ***earliest stage of a transaction***." *Id*.
(emphasis added).

Running back and forth between the two types of purchase flows identified in the
complaint, See Tickets next argues that it complied with the law because: "***If*** acquired through
[*the second purchase*] flow[] [identified in the Complaint], Plaintiff received the total price for
this ticket … before checkout." MTD at 16 (emphasis added). There is no reason for See Tickets
to use the word "if." We know that Mr. Fortune did ***not*** view the second type of purchase flow,
only the first—***as See Tickets's witness declares under oath*** and incorporates by reference into
the complaint. Declaration of Marisa Veeh (ECF No. 15) at ¶¶ 6 and 7, and Ex. 1 and Ex. 2 (ECF

Nos. 15-1 and 15-2). And on a Rule 12(b)(6) motion to dismiss, we only ask whether Plaintiff

stated a claim. See Tickets's hypothetical arguments about what other unnamed class members

may have seen are irrelevant.

That said, were the Court to construe See Tickets's pleading as Rule 12(f) motion to

strike the Complaint's class allegations, and consider the second type of purchase flow identified

in Plaintiff's complaint accordingly, the motion should still be denied as to other unnamed class

members. "Regardless of the whether [we consider purchase flow one or two] they all violate

ACAL § 25.07 (4) in the same way." Compl., ¶ 15. They both fail to disclose of the "total cost of

each ticket … before a consumer ***first clicks*** either the 'CHECKOUT' button in Figure 2 or the

'ADD TO CART' button in Figures 4 and 5." *Id*. As other courts in this District have recognized,

"the statute requires more: 'disclosure of the total cost … shall be displayed in the ticket listing

*prior to* the ticket being *selected for* purchase.'" *Berryman v. Reading Int'l, Inc.*, --- F. Supp. 3d -

---, No. 24 CIV.750-PAE, 2025 WL 315403, at *6 (S.D.N.Y. Jan. 28, 2025) (emphasis added by

district court) (quoting ACAL § 25.07(4)). This means when Mr. Fortune "viewed the tickets for

the ***first time*** … [defendant] violated the duty to disclose the total ticket price." *Summerville*,

*supra*,        2025        WL        588644,        at        *4        (emphasis        added).

Next, See Tickets argues Plaintiff suffered no real injury under ACAL § 25.33 or Article

III because, in its view, "Plaintiff's true gripe… is … that … numbers were not added up for

him." MTD at 12. As noted, Defendant attacks a strawman. "Defendant … entirely overlooks

that the complaint alleges that plaintiff suffered an economic injury that flowed from defendant's

purported violation of the statute," *Charles v. Color Factory, LLC*, No. 1:24-cv-322 (JSR), 2024

WL 1693236, at *3 (S.D.N.Y. Apr. 19, 2024).   "[B]y not having the total cost of his ticket

disclosed upfront … Defendant was able to reduce price competition and cause consumers like

Plaintiff to overpay." Compl., ¶ 42. Courts in this district recognize that consumers suffer concrete injuries under both Article III and the ACAL when a defendant's failure to disclose the total cost "driv[es] up the 'all-in' price of tickets, caus[es] [consumers] to pay a price premium." *Berryman*, 2025 WL 315403, at *6, n.4; *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 582 (S.D.N.Y. 2024). This remains true even if its competitors do not sell tickets to the very same concert, but similar events. *See Carovillano*, 715 F. Supp. 3d at 583 (Plaintiff plausibly alleged a cognizable injury where Sirius XM's failure to disclose the total, "all-in" cost of its services caused him to pay a price premium because its pricing practice let it avoid "downward price pressure from competitors … which offer ***similar*** music-streaming services but do," disclose the all-in price upfront). By failing to transparently disclose the "all-in" price of its tickets, See Tickets "*distort*[*s*] *the marketplace* and *cause*[*s*] *consumer harm*." Senate Report at 26 (emphasis added). For this reason, Defendant's competitors said that an "industry-wide standard" mandating that "the total price of a ticket … be disclosed to the purchaser at the earliest stage of a transaction" was needed to remove "any competitive disadvantage among different online marketplaces." Senate Report at 27.

To use Defendant's own turn of phrase, See Tickets "true gripe" is not that Mr. Fortune has no real injury; rather, its "true gripe" appears to be that the "formalistic" law that was passed was bad as a matter of policy. MTD at 13. The time to have made that argument was back in 2021, when the policymakers received input from primary and secondary ticket sellers. It is not today, *after* the law was passed and See Tickets undercut the competition by flouting the very same law its competitors said needed to be the "industry-wide standard." Senate Report at 27.

Defendant's final argument that the case should be dismissed under the voluntary payment doctrine likewise fails. Courts in other ACAL § 25.07(4) cases have routinely rejected

this defense, as "the voluntary payment doctrine does not apply when a plaintiff challenges full disclosure by the defendant," and here, defendant "violated ACAL's requirements of full disclosure." *Summerville*, 2025 WL 588644, at *5; accord *Berryman*, 2025 WL 315403, at *7; *Presson*, 2025 WL 692123, at *6; *Charles*, 2024 WL 1693236, at *4; *Vasell v. SeatGeek, Inc.*, No. 24-CV-00932 (NCM) (JRC), 2025 WL 240912, at *14 (E.D.N.Y. Jan. 17, 2025); *Cammayo v. 1 AND 8, Inc.*, No. 150173/2024, 2024 WL 5170481, at *4 (N.Y. Sup. Ct. Dec. 09, 2024); *Patterson v. Wildlife Conservation Soc'y*, Case No. 24-cv-171 (JMF), ECF No. 26 (S.D.N.Y. May 22, 2024). For these reasons, See Tickets's motion should be denied.

## I.    THE COMPLAINT AND THE FACTS INCORPORATED BY REFERENCE

Plaintiff's complaint identifies two different types of purchase flows on See Tickets's website. Compl., ¶ 15. Plaintiff viewed only one of these two purchase flows. Compl., ¶ 7; Veeh Decl., ¶¶ 6-7. In its brief, See Tickets switches between the two purchase flows without any warning or explanation, which might cause confusion. So in the interests of clarity, Plaintiff will spell out the two purchase flows here.

### A.    The Purchase Flow Plaintiff Saw

Plaintiff purchased tickets to events at 3 Dollar Bill and 9 Bob Note on June 11, 2023 and October 21, 2023. Compl., ¶ 7. Based on these allegations, See Tickets's Executive Product Strategy officer was able to "access[] the event and [re]create[] full page screen shots that reflect the purchase flow for the events … identified in the Complaint." Veeh Decl., ¶ 4. Plaintiff does not dispute that these images would be incorporated by reference into his Complaint.

For the 3 Dollar Bill venue, "Page 2A is the ***first page a customer sees*** after selecting the

… event." Veeh Decl., ¶ 7 (emphasis added). As shown below, Page 2A does not show the total

cost of an individual ticket. *See* ECF 15-2 at Page 2A, reproduced below. [1]



"After the consumer clicks the 'CHECKOUT' button, the Defendant interrupts the

purchase flow by prompting the consumer to either sign in, create an account, or checkout as

guest. *See* Figure 6." Compl., ¶ 16 (reproduced below). See Ticket's declarant does not deny this

and is presumed true for the purposes of this motion.

---

[1] Plaintiff notes that See Tickets's declarant appears to have inadvertently mixed up the dates for the 3 Dollar Bill and 9 Bob Note events. For example, Mr. Fortune alleges visiting 3 Dollar Bill on June 11, 2023 and 9 Bob Note on October 21, 2023. Compl., ¶ 14. However, in Ms. Veeh's screenshot of the 3 Dollar Bill event above, the time stamp on the upper-right-hand corner says "Saturday, Oct 21, 2023," while the purple promotional poster for the event includes the correct date of "SUNDAY JUNE 11." ECF No. 15-2 at 2. Nevertheless, Plaintiff assumes for the sake of argument that this ticket listing page for this June 11 event remained the same from June 11 to October 21.



"After a consumer completes signing in or checking out as a guest, they are taken to the final payment page. At the very top of the page, a ten-minute countdown timer begins." Compl., ¶ 17. See Ticket's declarant does not deny this, and is presumed true for the purposes of this motion. "Page 1B is the [final payment] page a customer sees ***after they select the number of tickets*** to purchase and click 'CHECKOUT' on the page shown at 1A." Veeh Decl., ¶ 6 (emphasis added). This final payment page "displays the total due." *Id*. *See* ECF No. 15-1, Page 1B, reproduced on the next page.



"If the clock runs out, consumers are kicked out, and must start the process all over again. Better luck next time." Compl., ¶ 22 (internal citation omitted). See Ticket's declarant does not deny this, and is presumed true for the purposes of this motion. *See* Compl., Fig. 10, below.



The purchase flow for the 9 Bob Note concert Plaintiff saw is the same, aside from the event details and ticket costs being different. *See* Veeh Decl., ¶ 6; ECF 15-1.

**B.    The Purchase Flow Some Unnamed Putative Class Members Saw**

The other purchase flow on See Tickets's website, which Plaintiff did not see, "make[s] the consumer go through one extra step." Compl. ¶ 14. Figure 5 of the Complaint shows the "first page a customer sees after selecting the specific event," Veeh Decl. ¶ 8, which See Ticket's declarant does not deny, and is presumed true for the purposes of this motion. Figure 5 does not show the total cost of an individual ticket. *See* Compl., Fig. 5, shown on the next page.



"*After* the consumer [selects the number of tickets he wishes to purchase and] clicks "ADD TO CART,' the 'CHECKOUT' button on the upper right-hand side of the screen is illuminated and shows the total due, but not the total cost of each ticket." Compl., ¶ 14 (emphases in original). See Ticket's declarant does not deny this, and is presumed true for the

purposes of this motion. Page 3A of Exhibit 3 Ms. Veeh's declaration shows the same page after the "'CHECKOUT' button is… illuminated." *See* ECF No. 15-3 at Page 3A.



"After the consumer clicks the 'CHECKOUT' button' the Defendant interrupts the purchase flow by prompting the consumer to either sign in, create an account, or checkout as guest. *See* Figure 6." Compl., ¶ 16. See Ticket's declarant does not deny this, and is presumed true for the purposes of this motion.



"After a consumer completes signing in or checking out as a guest, they are taken to the final payment page. At the very top of the page, a ten-minute countdown timer begins." Compl., ¶ 17. See Ticket's declarant does not deny this, and is presumed true for the purposes of this motion. "Page 3B is the [final payment] page a customer sees ***after they select the number of tickets*** to purchase and click 'CHECKOUT' on the page shown at 3A." Veeh Decl., ¶ 8 (emphasis added). This final payment page "displays the total due." *Id*. *See* ECF No. 15-3, Page 3B, reproduced below; *accord* Figures 7-9 of Complaint (showing page for Guest Checkout).



"If the clock runs out, consumers are kicked out, and must start the process all over again. *See* Figure 10, below. Better luck next time." Compl., ¶ 22. See Ticket's declarant does not deny this, and is presumed true for the purposes of this motion.



11

## ARGUMENT

**II.    SEE TICKETS VIOLATED ACAL § 25.07(4) BY FAILING TO "DISCLOSE THE TOTAL COST OF THE TICKET … PRIOR TO THE TICKET BEING SELECTED FOR PURCHASE."**

**A.    ACAL § 25.07(4) Requires Adding Up Costs To Disclose "Total Cost" of Each Ticket**

See Tickets argues Mr. Fortune fails to plead a statutory violation because "nothing in the text of the ACAL" requires Defendant to "add[] up" all the components of a ticket's cost. MTD at 12. This is not true. By its plain terms, the law requires See Tickets to tally "the *total* cost of the ticket, *inclusive of all ancillary fees*." ACAL § 25.07(4) (emphasis added). "In the absence of a statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase." *Matter of Walsh v N.Y. State Comptroller*, 34 N.Y. 3d 520, 524 (2019); *accord United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) (relying on the Merriam-Webster online dictionary). Merriam-Webster says the word "total" means "the product of addition." https://www.merriam-webster.com/dictionary/total. As a verb, total means "to add up." *Id*. And as an adjective, as it is used here, "total" means "comprising or constituting a whole." *Id*. In other words, every component of the ticket's cost must be disclosed in one *whole* number, which—to quote ACAL § 25.07(4)—is "*inclusive of all ancillary fees*." (Emphasis added).

In case that was not clear enough, ACAL § 25.07(4) goes on to warn that "[d]isclosures of subtotals, fees, charges, and *any other component of the total price*… may not be presented more prominently [than] the *total price*." (Emphasis added). And by hiding the "total price" or

"total cost"[2] and only showing the "components of the total," See Tickets necessarily violates this provision as well. And because the ACAL § 25.07(4) uses the phrase "components of the total," we know that phrase cannot have the same meaning as the word "total." When the same law uses different phrases in different provisions, we interpret those different phrases to mean different things. *See Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) (applying "the presumption that the use of 'different words within the same statutory scheme is deliberate.'") (internal citation omitted).

Relatedly, See Tickets claims that "See Tickets has provided even greater transparency than City Winery whose parallel ACAL claims were dismissed at the pleading stage." MTD at 12 (citing *Frias v. City Winery New York, LLC*, 2024 WL 4495177, at *4 (N.Y. Sup. Ct. Oct. 11, 2024)). This is not true. In City Winery, the website added up all the components of a specific ticket's price ***before*** consumers clicked the "Select" button ($40.00 + $7.60 = $47.60).



**651284/2024 FRIAS, MIGUEL vs. CITY WINERY NEW YORK, LLC**                    **Page 2 of 8**
**Motion No. 002**

*See id.*,  Case No. 651284/2024, NYSCEF Doc. No. 31 at 2.

---

[2] As the *Summerville* court noted, the ACAL § 25.07(4)'s references to "total cost of the ticket" and "total price" mean the same thing where, as here, "a ticket purchaser cannot purchase a ticket from its website without paying the [defendant's] fee[s]." --- F. Supp. 3d ----,  2025 WL 588644, at *4.

See Tickets also claims the "purpose of the legislation" and the "legislative history" supports its attempt to read the words "total cost" out of the statute. MTD at 13. It does not. The 2021 Senate Report See Tickets relies on actually notes, "primary and secondary platforms [competing against See Tickets in the market] offered support for *all-in pricing* models," but "stressed the *competitive disadvantages* compared to other platforms [like See Tickets] that did not display the *total price of the tickets at the onset of a transaction*." Senate Report at 26-27 (emphasis added). So See Tickets's competitors called for making "all-in pricing … an industry-wide standard" so that "there will not be any competitive disadvantage among different online marketplaces." *Id*. at 27. The New York State Investigative Committee "strongly recommended" this approach: making "default standard" be that "the *total price of a ticket*, as well as the portion representing a service charge or fee, should be disclosed to the purchaser at the *earliest stage of a transaction*." *Id*. (emphasis added).

> **B.    ACAL  § 25.07(4) Requires The Total Cost Disclosure To Occur On The "Ticket Listing" Page, "Prior To The Ticket Being Selected For Purchase."**

>> **1.    <u>The Purchase Flow Plaintiff Saw Did Not Disclose The Total Cost Before the Ticket Was Selected.</u>**

See Tickets violated ACAL § 25.07(4) on the purchase flow that Plaintiff saw, ECF Nos. 15-1 and 15-2, because See Tickets waited until the final payment page to disclose the "total due." Courts in this District have uniformly held that the "total cost and fees" disclosure must occur *before* the final payment page. *Berryman*, *supra*, --- F. Supp. 3d ----,  2025 WL 315403, at *6; *Summerville*, *supra*, --- F. Supp. 3d ----, 2025 WL 588644, at *4; *Charles*, *supra*, 2024 WL1693236; *Presson v. Alamo Intermediate II Holdings, LLC*, No. 24-CV-170 (ER), 2025 WL 692123, at *6 (S.D.N.Y. Mar. 4, 2025). As the Court in *Berryman* emphasized, "the statute requires more: 'disclosure of the total cost and fees shall be displayed in the ticket listing *prior to*

the ticket being *selected for* purchase.'" 2025 WL 315403, at *6 (S.D.N.Y. Jan. 28, 2025) (emphasis in original).

The words *Berryman* italicized are critical. If disclosure of the "total cost" was sufficient at *any point* during the purchase process, then the ACAL § 25.07(4) simply would have said that the "total cost and fees shall be displayed in the ticket listing prior to the ticket ... purchase," and the conditional clause "being selected for" would have been superfluous. Such an interpretation would be improper. In interpreting statutes, "[i]t is our duty to give effect, if possible, to every clause and word of a statute." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Here, the only page that Plaintiff viewed which could be characterized as a "ticket listing" where tickets can be "selected for purchase" are Pages 1A and 2A in Exhibits 1 and 2 of the Veeh Declaration. ECF Nos. 15-1 and 15-2. While Ms. Veeh notes that the latter final payment page also includes the "total due" on Pages 1B and 2B, there is no option to select tickets for purchase on this page, only to buy the tickets already selected. As such, because the "total cost" disclosure did not occur "prior to" this selection, See Tickets violated the law. The *Presson* court reached the same conclusion. In *Presson*, the court denied a motion to dismiss an ACAL § 25.07(4) claim where the "website 'clearly depicts' the total cost... on the Checkout page." 2025 WL 692123, at *6. "The statute requires disclosure of the total cost and fees '*prior to the ticket being selected for purchase.*' [Plaintiff] alleges that the [total cost] was disclosed for the first time on the Checkout page—*after* he had selected his tickets for purchase. He has therefore plausibly alleged that [defendant's] website violated the statute." *Id*. (emphases in original) (internal citations omitted).

The dictionary definition of the word "select" supports this reading. "Select" means "to choose (as by fitness or excellence) *from a number or group*." https://www.merriam-webster.com/dictionary/select (emphasis added). The Oxford English online dictionary similarly defines the verb select as "[t]o choose or pick out in preference *to another or others*." https://www.oed.com/search/dictionary/?scope=Entries&q=select (emphasis added). So, for a consumer to select any one ticket, there must be a *selection* of other tickets to pick and choose from. Under this plain meaning of the word, a user *selects* a specific ticket for purchase on Pages 1A and 2A, when consumers can select which type of ticket they wish to purchase and the quantity. By the time a consumer reaches the Checkout page depicted in Pages 1B and 2B, there is *no* selection of *other* tickets to "choose or pick out in preference *to another or others*." https://www.oed.com/search/dictionary/?scope=Entries&q=select (emphasis added).

2.    **The Other Purchase Flow Unnamed Class Members Saw Did Not Disclose The Total Cost Before the Ticket Was Selected.**

See Tickets notes that on the other purchase flow, one the *Plaintiff did not view*, the "Total Due" for all the tickets (plural) is illuminated "*after* a purchaser clicks 'ADD TO CART'" on Figure 5. MTD at 6 (emphasis added). But by this point, the ticket or tickets have already been "*selected* for purchase" as a consumer already chose the type of ticket and quantity of tickets and clicked the "ADD TO CART" button. Because the "total cost" was not disclosed "prior to" this selection, See Tickets violated the law. Simply put, by adding extra steps where tickets can be "selected" in the purchase flow, See Tickets has simply created additional steps where it needs to comply with the law.

On this point, both *Summerville* and *Berryman* are instructive. In *Summerville*, the defendant split up its ticket selection process into an "event page" where "only a ticket price of $20 per ticket" was shown, and a latter "seat selection page," where "[o]n hovering over a seat,

16

again, only the ticket price of $20 per ticket was displayed." 2025 WL 588644, at *1. "After Summerville clicked on a specific seat, a service fee of $4.50 per ticket and a sales tax of $1.77 per ticket were displayed for the first time" on the same page. *Id*. Even though the website in *Summerville* split up its ticket selection process into three steps, it still needed to comply with the law at the *first step*. *Id*. The Court held that the ticket was "selected for purchase" when the plaintiff "viewed the tickets for the *first time* on the event page." *Id*. (emphasis added). "As only the ticket price of $20 was shown *at this stage*, Gotham violated the *duty to disclose the total ticket price* as required by the ACAL." *Id*. at *4 (emphasis added). The same was true, in *Berryman*, where a website split up its purchase flow into a "'ticket selection' page" which only displayed "ticket prices" and a subsequent " 'seat selection' page," which added an "an additional 'service charge' of $2.19 per ticket." 2025 WL 315403, at *1. The Court denied the motion to dismiss because "[i]nsofar as the Complaint alleges that the ticket selection page, which *precedes* the seat selection page, omits the [total cost] and fee, it plausibly states a claim." *Id*. at *6. To hold otherwise would simply reward websites for creating more and more convoluted purchase flows.

As applied here, on the second purchase flow, a ticket is "selected for purchase" on Figure 5 of the Complaint, when the website prompts the user to "Select ticket types, then hit Add to Cart." The first selection occurs when the user toggles the quantity drop down to select both number and type of the tickets from a selection of various different options. *See* Compl., Fig. 5.

17



Because the "total cost of the ticket" is not disclosed at this stage, See Tickets has violated ACAL §25.07(4) for the first time.

After the user *selected* which tickets to purchase from this selection, he can "then hit Add to Cart" at the bottom the same page. *See* Compl., Fig 5. This is the second time a ticket is selected for purchase. If the user selected more than one ticket on the previous step, then the user is not even selecting a single ticket for purchase, but a bundle of previously selected tickets for purchase. Significantly, ACAL § 25.07(4) uses the singular "ticket" for the total cost disclosure provision, even though it uses the plural "tickets' in other provisions: "total cost and fees shall be displayed in the ticket listing prior to *the ticket* being selected for purchase." (Emphasis added). Courts presume this is intentional. *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 555, and 558 (2021) (law stating "lender … shall give notice to ***the borrower***" referred to a *single* borrower because "'the borrower' is in singular form," while other parts of the law used the plural 'borrowers.'")



Until and unless the "Add to Cart" button is clicked, the Cart on the upper left-hand side remains empty and the "total cost of the ticket" is not disclosed. Because the "total cost of the ticket" is not disclosed at this stage, See Tickets has violated ACAL §25.07(4) for the second time.



By analogy, if a driver crosses three intersections with stop signs, the car must come to a complete stop at all three intersections. The driver cannot evade liability for rolling through the first and second intersections by pointing to the fact because the car stopped at the third intersection. The same is true here. See Tickets may well have disclosed the "Total due"[3] later in the purchase process, but that does excuse it from violating the law earlier. See Tickets did not disclose the "total due" prior to the tickets being first *selected.*

To the extent that the New York state trial court decision in *Frias*, 2024 WL 4495177, at *4—which See Tickets relies on in passing—is inconsistent with *Berryman*, *Summerville*, *Presson*, or *Charles*, it was wrongly decided and does not control here. The *Frias* court held that the "entire cost … [needed to be] disclosed prior to the *customer choosing to buy* the ticket on the website." *Id.* at *5 (emphasis added). But the question of when a "*consumer choos[es] to buy*" a ticket, *see id.* at *5, as opposed to when he is "*merely … browsing a selection of ticket options,*" *see id.* at *4, is entirely subjective. Indeed, one consumer could have made up her mind to buy something before she even arrives on a ticket seller's website, while another consumer could remain undecided even after reaching the final Checkout page. The *Frias* approach thus improperly calls on judges to act as fact finders and mind readers.

Because the *Frias* court applied a subjective test, it could not coherently identify the point at which the duty to disclose the total cost was triggered. *See id.* at *4-*5. In one portion of the opinion, it said "[i]t is only once the visitor **has the option to select a specific seat** that … disclosure of the 'total cost of the tickets' is required." *Id.* at *4 (emphasis added). But in another, it said that the disclosure of total cost of the ticket was not required when "***customer clicks on a seat from an interactive seating chart.***" *Id.* (emphasis added).

---

[3] Plaintiff also notes that the "Total due" is not the same as the "total cost of the ticket" as required by ACAL § 25.07(4). *See* Section III.A.3, *infra*. The total due includes the total cost of all tickets to be purchased inclusive of applicable taxes.

The objective approach taken in *Berryman* and *Summerville* is the better one. Rather than asking courts to cherry-pick a moment in time they subjectively feel like a consumer has chosen to buy something, *Berryman* and *Summerville* hold that a ticket is "selected for purchase" any time there a selection of different ticket options. This is a clear and coherent standard that can lead to consistent and predictable results.

The objective *Berryman* and *Summerville* test is also supported by the statute's text. ACAL § 25.07(4) never uses the phrase "prior to the ***customer choosing to buy the ticket***." *Frias*, 2024 WL 4495177, at *5. Indeed, it never references the customer at all. Instead, it says: "disclosure of the total cost and fees shall be displayed in the *ticket listing* prior to the ticket being *selected* for purchase." ACAL § 25.07 (4). By referencing the "ticket listing" page where "the ticket [is] being selected," this statutory provision objectively refers to design of a website; not the consumer's subjective experience using it.

The objective *Berryman* and *Summerville* test is also supported by the statute's legislative history. "The 2021 investigative report recommended that the total cost of a ticket, including the service fee, should be disclosed at the earliest stage of a transaction, i.e. 'when tickets are first viewed on a website.'" *Summerville*, 2025 WL 588644, at *4 (quoting the Senate Report at 30). "The total price of a ticket must be disclosed at the beginning of a transaction at the first instance a price is shown." New York Sponsors Memorandum, 2022 S.B. 9461.

### C.    The Law Requires The "Total Cost" For Each Ticket

Even assuming See Tickets's disclosures on the subsequent screens in Pages 1B, 2B, and 3B of the Veeh Declaration are timely—they are not— See Tickets never disclosed the "total cost" of a single ticket, as the law required. Instead, it disclosed "TOTAL DUE" for all the tickets collectively. The ACAL's use of the *singular* "ticket" in the total cost disclosure

provision requires Defendant to "disclose the total cost of [every *single*] ticket." ACAL § 25.07(4). While other ACAL § 25.07(4) provisions refer to "tickets" in the *plural* ("resale of ticke**s**" and "non-electronic ticke**s**"), this provision uses the *singular* ticket: "Every… platform that facilitates the sale or resale of tickets shall disclose the total cost of <u>the ticket</u>." ACAL § 25.07(4) (emphasis added). Likewise, in *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 555, and 558 (2021) the New York Court of Appeals interpreted a provision stating that "lender … shall give notice to *the borrower*" as referring to a *single* borrower in multi-borrower loans, because "'the borrower' is in singular form," and other parts of the law use the plural 'borrowers.'" (Emphasis in original). The same reasoning applies here.

## III.    PLAINTIFF SUFFERED INJURIES TO HIS POCKETBOOK

See Tickets—like every other ACAL § 25.07(4) defendant that came before it—argues a violation of this law is "a bare procedural violation" such that Plaintiff did not suffer a cognizable injury under Article III or ACAL § 25.33. "Defendant, however, entirely overlooks that the complaint alleges that plaintiff suffered an economic injury that flowed from defendant's purported violation of the statute." *Charles*, 2024 WL 1693236, at *3 (S.D.N.Y. Apr. 19, 2024) (denying motion to dismiss because plaintiff pled a "classic pocketbook injury"); *Vasell*, 2025 WL 240912, at *12 (same); *Berryman*, 2025 WL 315403, at *6 (same); *Summerville*, 2025 WL 315403, at *6 (same); *Presson*, 2025 WL 692123, at *5 (same).

### A.    Plaintiff Overpaid For His Tickets

Contrary to See Ticket's condescending assertions, Plaintiff's primary injury here isn't that he is too stupid to "perform basic arithmetic," MTD at 16, just as in other ACAL § 25.07(4) cases, the injury wasn't that the consumers were too stupid to realize they would be charged a fee when it was disclosed "mere seconds after learning of the $20.00 ticket price," *Summerville*,

Case No. 1:24-cv-1484 (ER), ECF No. 16 at 14 (defendant's memorandum in support of motion to dismiss). Instead, Plaintiff suffered a statutory injury and an injury-in-fact by overpaying for his tickets. By failing to transparently disclose the total cost of its tickets, See Tickets helped "driv[e] up the 'all-in' price of tickets, causing [consumers] to pay a price premium." *Berryman*, 2025 WL 315403, at \*6, n.4; *accord* Compl., ¶ 42. This "theory of pricing injury is cognizable where 'a misrepresentation artificially inflated the market price of a product, causing a plaintiff to pay more for it than she otherwise would have—regardless of whether [plaintiff] even saw the misrepresentation.'" *Berryman*, 2025 WL 315403, at \*6, n.4 (quoting *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 582 (S.D.N.Y. 2024)).

In *Berryman*, the plaintiff could establish a cognizable injury under Article III by arguing "that had [a movie theater] disclosed the all-in ticket price at the outset of the purchasing process, it would have faced downward price pressure from its competitors—such as 'AMC, Regal, Fandango, or some other video service provider.'" 2025 WL 315403, at \*6, n.4. Again, in *Carovillano*, the court held that plaintiff alleged a cognizable injury under N.Y. Gen. Bus. Law § 349—which See Tickets's concedes is "analogous" to ACAL § 25.33, whose "language… parallels the private right of action under New York's General Business Law," MTD at 15— where a satellite music streaming service failed to disclose the total cost of its services under this same "price premium" theory. 715 F. Supp. 3d 562, 581-83. "[H]ad Sirius XM revealed the all-in price of its subscriptions, it would have faced downward price pressure from competitors, such as 'Apple Music, Spotify, Amazon Music, [and] Google Play Music,' all of which offer similar music-streaming services but do not" hide the total cost of their services. *Id*. at 583. The same is true here. Plaintiff alleges he was "harmed by not having the total cost of his tickets disclosed upfront at the start of the purchase process. By not knowing the total cost of his tickets before

Plaintiff selected his tickets for purchase from Defendant, Plaintiff could not shop around for tickets from other ticket sellers like EventBrite or Tick Pick, just to name a few. As such … Defendant was able to reduce price competition and cause consumers like Plaintiff to overpay." Compl., ¶ 42.

None of See Tickets's contrary arguments withstand scrutiny. See Tickets argues that "because See Tickets discloses all the fees upfront, consumers *do* know the cost of the tickets before they are selected for purchase." MTD at 15. This misses the mark. By providing piece-meal disclosures instead of the "all-in price," See Tickets reduces the consumer's sticker shock. Indeed, "recent studies on how consumers perceive … price communications," found that "twice as many consumers (47%)" will buy an upgraded product if it is listed as costing "$9.99 + $7.00" than if exactly the same product is listed as costing "$16.99." Harvard Business Review, *Upgrade Your Pricing Strategy to Match Consumer Behavior*, https://hbr.org/2020/05/upgrade-your-pricing-strategy-to-match-consumer-behavior (May 28, 2020). And because other competitors are complying with ACAL § 25.07(4) by disclosing the "total cost" of their tickets, then See Tickets does not need to compete as vigorously and can overcharge consumers—*i.e.*, by inducing shoppers to buy a ticket for $9.99 + $6.99 from Defendant instead of $15.00 from a competitor.

See Tickets also argues that "[t]hough Plaintiff alleges he was denied the ability to shop around for the tickets to the events he attended, he offers no plausible allegations that anyone other than See Tickets sold tickets for the events he attended." MTD at 16. But as this Court noted, See Tickets "is demanding more than the law requires … defendant's contention that a plaintiff must identify a precisely comparable product in order to allege a [NY law] claim under a price premium theory … contradicts the weight of the law in this Circuit." *Colpitts v. Blue*

*Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021) (Cronan, J.) (internal citation and quotation marks omitted). And here, even if Plaintiff cannot buy tickets to ***exactly the same concert*** anywhere else, he can still shop around for tickets to ***similar concerts*** from "EventBrite or Tick Pick." Compl., ¶ 42. The same was true in *Carovillano*, where plaintiff alleged that Sirius XM competitors "offer[ed] ***similar*** music-streaming services," even though each music-streaming service likely contained a different library of content. 715 F. Supp. 3d at 583.

See Tickets also argues that a consumer like Plaintiff is unlikely to "have experienced any confusion as to whether the fee prices were on 'a per-transaction or per-ticket basis,'" if they only bought one ticket at a time. But "regardless of whether [plaintiff] even saw the misrepresentation," the pocketbook injury suffered here remained the same: the payment of an "inflated [] market price." *Berryman*, 2025 WL 315403, at *6, n.4 (quoting *Carovillano*, 715 F. Supp. 3d at 582). As the *Carovillano* court explained:

> Consider [] a product advertised for $10 where the merchant surreptitiously charges $100. Assume that other stores sell the same (or similar) products for $15. If the merchant is forced to advertise his real price, there is little reason to think his pricing behavior will remain static—instead, he will have to adjust his real price downwards from $100 to account for the market price of $15.

715 F. Supp. 3d at 583.

Again, the same is true here. If See Tickets disclosed "total cost of the ticket," as it is required to under ACAL § 25.07(4), then it will likely change its pricing strategy in the aggregate, regardless of whether any one individual consumer was misled or confused.

### B.    Plaintiff Suffered A Cognizable Informational Injury

Defendant also argues Plaintiff lacks Article III standing to pursue his ACAL § 25.07(4) claim because "Plaintiff has pleaded no more than … informational violation, without any downstream consequences." MTD at 16. This, too, is untrue. Under Article III, "a plaintiff

suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (internal citation omitted). "Informational injury is considered concrete when the plaintiff identifies 'downstream consequences' from failing to receive required information." *Summerville*, 2025 WL 588644, at *3 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). The Second Circuit recently clarified that there are downstream consequences whenever a consumer "actually lost [money]," so long as there is "some causal connection between the lack of accurate notices and the downstream harm." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308-09 (2d Cir. 2024). As such, courts in other ACAL § 25.07(4) cases have held Plaintiffs plausibly alleged concrete informational injuries with downstream consequences by "pa[ying] an extra $4.50 [fee] per ticket," even though such fees were disclosed before checkout. *Summerville*,  2025 WL 588644, at *3; *see also Berryman*, 2025 WL 315403, at *6.

Likewise here, Plaintiff pleads a "causal connection between [See Ticket's piece-meal price disclosure] and the downstream harm," *Guthrie*, 113 F.4th at 308—the "reduc[tion] [of] price competition [which] cause[d] consumers like Plaintiff to overpay." Compl., ¶ 42. *See Berryman*, 2025 WL 315403, at *6, n.4; *Carovillano*, 715 F. Supp. 3d at 583; and Harvard Business Review, *Upgrade Your Pricing Strategy to Match Consumer Behavior*, https://hbr.org/2020/05/upgrade-your-pricing-strategy-to-match-consumer-behavior (May  28, 2020) (noting that "twice as many consumers" will buy a product if it is listed as "$9.99 + $7.00" than if exactly the same product is listed as "$16.99").

For this reason, See Tickets's reliance on *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017) is inapt. In that case, the court rejected plaintiff's informational injury theory because, "[s]ignificantly, however, the

Complaint does not allege that, as a result of having purchased or paid premiums for those life insurance policies, Plaintiffs themselves were injured, financially or otherwise. Plaintiffs do not allege, for example, that they *paid higher premiums*." 115 F. Supp. 3d at 435 (emphasis added). Here, in contrast, Mr. Fortunes alleges the very allegations the court in *Ross* stressed were missing: that he overpaid for his tickets because See Tickets gave him piece-meal disclosures. Compl., ¶ 42.

As a final note, it is easy to see how abusive See Tickets's pricing practice can become if the ACAL's bright-line "total cost" rule is not enforced.  Under See Ticket's reasoning, rather than split up the ticket price into two or three components, it would equally permissible for it to split up the price into ten components, because, after all, consumers could still "perform basic arithmetic." Rather than say a ticket costs $20.00, See Ticket could advertise the ticket as being on sale for the low price $5.00, but includes various mandatory fees: $1.10 (electronic delivery fee), $2.13 (venue service charge), $1.99 (artist service charge), $1.56 (staff healthcare fee), $1.24 (concert promotion fee), $1.63 (venue sanitation fee), $1.97 (credit card surcharge), $1.78 (equipment maintenance fee), $1.60 (identity verification fee). This regime benefits no one. It harms consumers by obfuscating prices, and it harms businesses by incentivizing them not to compete on price, but on who can provide the most needlessly convoluted pricing disclosures. This is not a productive use of anyone's scarce resources.

## IV.    THE VOLUNTARY PAYMENT DOCTRINE IS INAPPLICABLE BECAUSE PLAINTIFF ALLEGES A LACK OF FULL DISCLOSURE

Defendant argues that "[Plaintiff's] claim should [] be dismissed pursuant to the voluntary payment doctrine. MTD at 21. Not so.

First, "[a]s an affirmative defense, courts are reluctant to dismiss claims under the voluntary payment doctrine at the pleading stage." *Summerville*, 2025 WL 588644, at *4 (citing

*Vasell v. SeatGeek, Inc.*, No. 24-CV-00932 (NCM) (JRC), 2025 WL 240912, at *14 (E.D.N.Y. Jan. 17, 2025)). The court should deny the motion to dismiss on this ground alone.

Second, courts in other ACAL § 25.07(4) cases have routinely rejected this defense, as "the voluntary payment doctrine does not apply when a plaintiff challenges full disclosure by the defendant," and here, defendant "violated ACAL's requirements of full disclosure." *Summerville*, 2025 WL 588644, at *5; *see also Berryman*, 2025 WL 315403, at *7; *Presson*, 2025 WL 692123, at *6; *Charles*, 2024 WL 1693236, at *4; *Vasell v. SeatGeek, Inc.*, No. 24-CV-00932 (NCM) (JRC), 2025 WL 240912, at *14 (E.D.N.Y. Jan. 17, 2025); *Cammayo v. 1 AND 8, Inc.*, No. 150173/2024, 2024 WL 5170481, at *4 (N.Y. Sup. Ct. Dec. 09, 2024); *Patterson v. Wildlife Conservation Soc'y*, Case No. 24-cv-171 (JMF), ECF No. 26 (S.D.N.Y. May 22, 2024). As should this Court here.

See Tickets nevertheless contends this case is somehow distinguishable from the others because "See Tickets did fully disclose the ticket price and ancillary fees from the first time the ticket price was listed." MTD at 21-22. It is not. In all these ACAL §25.07(4) cases, the lack of full disclosure was varied. In *Summerville, Berryman*, *Vasell*, and *Patterson* the total cost and fees were omitted from the first ticket selection page, but added to various other selection pages before checkout. 2025 WL 588644, at *5; 2025 WL 315403, at *7; 2025 WL 240912, at *14; Case No. 24-cv-171 (JMF), ECF No. 1. In *Presson*, the total cost and fees were omitted when a user hovered over his seat, but appeared on the checkout page. 2025 WL 692123, at *6. And in *Charles* and *Cammayo*, the fees remained bundled as "Taxes & Fees," even though total cost appeared on final checkout page. 2024 WL 1693236, at *4; 2024 WL 5170481, at *4. While the violations in these cases may have differed on the margins, in all of them, defendants had "violated ACAL's requirements of full disclosure." *Summerville*, 2025 WL 588644, at *5.

The same is true here. While See Tickets may have listed the individual "components of the total," it did not disclose the "total cost of the ticket." Defendant thus "violated ACAL's requirements of full disclosure." *Summerville*, 2025 WL 588644, at *5. Because plaintiff "adequately alleges that [defendant] failed to disclose the total cost of a ticket … the voluntary payment doctrine is not a basis to dismiss" plaintiff's claim. *Summerville*, 2025 WL 588644, at *5.

Third, the doctrine only applies to "payments voluntarily made with full knowledge of the facts." *Summerville*, 2025 WL 588644, at *4 (rejecting the defense in another ACAL § 25.07(4) case). And here, there is nothing in "plaintiff's pleading establishe[s] h[is] own awareness that []he was being overcharged." *Vasell*, 2025 WL 240912, at *14. Indeed, while in most ACAL § 25.07(4), plaintiffs merely challenged the payment of their untimely disclosed ticket fee, here, Mr. Fortune's injury was a much subtler one: that he was overcharged by being presented with a piece-meal pricing disclosures instead of an all-in price. Compl., ¶ 42; Harvard Business Review, *Upgrade Your Pricing Strategy to Match Consumer Behavior*, https://hbr.org/2020/05/upgrade-your-pricing-strategy-to-match-consumer-behavior (May 28, 2020). Indeed, there is nothing on the face of Mr. Fortune's complaint clarifying that he is a behavioral economist that would readily pick up on this pricing trick. Thus,"[w]here the pleadings 'do not establish whether Plaintiff[] knew or should have known that the product prices were' misleading, dismissal under voluntary payment doctrine is premature." *Summerville*, 2025 WL 588644, at *4 (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009)).

Defendant argues also "Plaintiff… deci[ded] to *twice* voluntarily pay for tickets using See Tickets' website." MTD at 22 (citations omitted) (emphasis in original). But the fact Plaintiff

made a second purchase does not establish he knew or should've known he was overcharged, especially when the Defendant used a highly subtle pricing trick. Indeed, in *Spagnola*, 574 F.3d at 73, the court held that "dismissal under voluntary payment doctrine is premature" where plaintiff made five separate policy renewals, and in *Summerville*, 2025 WL 588644, at *4, the court rejected the voluntary payment doctrine where "the plaintiff 'had four opportunities, on each such page, to back out before purchasing his tickets.'" Instead, "[w]here the pleadings 'do not establish whether Plaintiff[] knew or should have known that the product prices were' misleading, dismissal under voluntary payment doctrine is premature." *Summerville*, 2025 WL 588644, at *4 (citing *Spagnola*, 574 F.3d at 73).

The cases Defendant relies on are all readily distinguishable. *See* MTD at 21 (citing *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 28 (2nd Dep't 2002), *aff'd*, 100 N.Y.2d 525 (2003); *Shelton v. CIOX Health, LLC*, No. 1:17-CV-00808, 2018 WL 4211447, at *2 (E.D.N.Y. July 16, 2018)). In *Dillon*, the pleadings established that the plaintiff repeatedly paid the very same cable bill late fee "from April 5, 1993 to March 9, 1999." 292 A.D.2d at 26. That is not the case here. Plaintiff only bought tickets twice. And in *Shelton*, the voluntary payment doctrine was established because plaintiff admitted she was "fully aware" she paid unlawfully high fees. 2018 WL 4211447, at *4, n.5. There is no such admission on this record. Thus, the voluntary payment doctrine is inapplicable here.

## CONCLUSION

For these reasons, See Tickets's motion to dismiss should be denied.

Dated: March 31, 2025          **BURSOR & FISHER, P.A**.

By: ___*/s/ Philip L. Fraietta*___
        Philip L. Fraietta

30

Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com


Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

The foregoing Memorandum of Law in Opposition to Motion to Dismiss contains 8,010 words, excluding the portions exempted by Local Civil Rule 7.1(c).  This Memorandum complies with the word-count limitations under Local Rule 7.1 because the word count does not exceed the 8,750 words permitted under the Rules.

By: _____*/s/ Philip L. Fraietta*_____
Philip L. Fraietta