```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
SOLOMON FORTUNE, individually and on behalf of all                     :
others similarly situated,                                             :
                                                                       :
                              Plaintiff,                               :
                                                                       :
              -v-                                                      :    24 Civ. 8415 (JPC)
                                                                       :
                                                                       :    OPINION AND ORDER
VIVENDI TICKETING US, LLC d/b/a SEE TICKETS                            :
USA, LLC,                                                              :
                                                                       :
                              Defendant.                               :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

      Plaintiff Solomon Fortune bought two event tickets from a website owned and operated by Vivendi Ticketing US, LLC, which does business as See Tickets USA, LLC ("See Tickets"). On the webpages where Fortune selected his tickets for purchase, See Tickets listed the base ticket price separately from any applicable fees, without also separately listing the sum total. This, according to Fortune, violated Section 25.07 of the New York Arts & Cultural Affairs Law ("NYACAL"), and he brings this putative class action to enforce that statutory requirement.

      See Tickets moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Fortune lacks standing to bring his claim and that he has failed to plausibly plead a statutory violation. For the reasons that follow, the Court concludes that Fortune has not adequately alleged facts supporting his theory of Article III injury. Accordingly, the Court dismisses the Complaint without prejudice for lack of standing. The Court grants Fortune leave to amend the Complaint in the event he believes he can cure the pleading deficiencies identified below.

## I. Background

A.   **Facts**[1]

See Tickets owns and operates a website, https://www.SeeTickets.us, through which it sells tickets for events held across the United States. Compl. ¶ 8. From the main page of the website, a consumer can "search for music, comedy, live performance, and other tickets by event, talent, organizer, or location." *Id.* ¶ 9. Once the consumer selects the specific event and date he would like tickets for, the purchase process begins. *Id.* ¶ 10. From there on, the consumer may be presented with one of two different "purchase flows."

In the first purchase flow, the consumer is presented with an initial ticket selection page that separately lists the ticket price and any fees, such as a service fee or an administrative fee, and allows the consumer to choose the desired number of tickets. *Id.* ¶ 10, Fig. 2.

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Compl."), as well as documents incorporated by reference therein. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (explaining that "[i]n a motion to dismiss pursuant to [Rule] 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both," and that when "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" (internal quotation marks omitted)); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (citations and internal quotation marks omitted)). The Court considers the screenshots of See Tickets's website attached to the Declaration of Marisa Veeh, Executive Product Strategist for See Tickets – North America, which was submitted by See Tickets in support of its motion, Dkt. 15 ("Veeh Decl."), because Fortune does not challenge the authenticity of the screenshots and "does not dispute that these images would be incorporated by reference into his Complaint," Dkt. 17 ("Opposition") at 5. *See Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 575 n.1 (S.D.N.Y. 2020) (considering screenshots of a website provided by the defendant as integral to the complaint, where the complaint "relie[d] extensively on the [website]" and included a partial screenshot, and where the plaintiff did "not contest the authenticity or accuracy of the[ defendant's] screenshots or suggest that [the court] should not consider them").



Veeh Decl., Exh. 2 at 2A; *see also* Compl. Fig. 2. After the consumer selects the desired quantity of tickets, he can click the "Checkout" button. Compl. ¶ 13. Upon clicking that button, the consumer is navigated to another page that prompts the consumer to either sign in, create an account, or checkout as a guest. *Id.* ¶ 16, Fig. 6.



*Id.* Fig. 6. After the consumer signs in or continues as a guest, he is taken to the checkout page, which shows a summary of the charges and total amount due. *Id.* ¶¶ 17-18, Figs. 7, 8 & 9; Veeh

3

Decl., Exh. 2 at 2B. At the top of this page, a ten-minute countdown timer begins. Compl. ¶ 17, Fig. 7; Veeh Decl., Exh. 2 at 2B.

Veeh Decl., Exh. 2 at 2B. If the timer runs its course before the transaction is completed, the consumer is navigated away from the checkout page and must begin the purchase process anew. Compl. ¶ 22, Fig. 10.

The second purchase flow is only different in that it interposes one extra step on consumers between the initial ticket selection page and the checkout page. *Id.* ¶ 14; *see also* Opposition at 5-11 (describing the two purchase flows). The ticket selection page in this second purchase flow is similar to the one presented in the first purchase flow, in that it lists ticket types with their attendant

base prices and fees and allows the consumer to select a quantity of tickets. Compl. ¶¶ 10, 13, Figs. 4 & 5.



*Id.* Fig. 5.

Instead of being presented with a "Checkout" button as in the first purchase flow, however, the consumer has the option to "Add to Cart" once he selects the desired number of tickets. *Id.* ¶ 13. After the consumer selects his tickets and clicks "Add to Cart," the "Checkout" button on

5

the upper righthand side of the screen is illuminated, and the consumer is presented with a summary of the charges and the total amount due.  *Id.* ¶ 14; *see also* Veeh Decl., Exh 3 at 3A.



Veeh Decl., Exh. 3 at 3A.

Once the consumer clicks the "Checkout" button, the remainder of the purchase flow is the same as the first.  The consumer is then navigated to a webpage with prompts to either sign in, create an account, or checkout as a guest.  Compl. ¶ 16, Fig. 6.  After completing that step, the consumer is taken to the checkout page, which shows a summary of the charges and total amount due and has a ten-minute countdown timer at the top of the page.  *Id.* ¶¶ 17-18, Figs. 7, 8 & 9; Veeh Decl., Exh. 3 at 3B.

6



Veeh Decl., Exh. 3 at 3B; *accord* Compl. Figs. 7, 8 & 9. If the timer runs its course without a ticket purchase, the consumer is navigated away from the checkout page and must restart the purchase process. Compl. ¶ 22, Fig. 10.

7

Fortune alleges that he twice purchased tickets from See Tickets's website. *Id.* ¶ 7. First, on June 9, 2023, he purchased one ticket to a "DJ set performing at a venue called 3 Dollar Bill, on June 11, 2023." *Id.* Second, on October 21, 2023, he purchased one ticket for "a dance party with live music at a venue called 9 Bob Note" taking place that same day. *Id.* To make both purchases, Fortune navigated through the first purchase flow described above. *Id.*; *see also* Opposition at 5 (noting that Fortune saw the first purchase flow); Veeha Decl., Exhs. 1-2 (depicting the webpages that Fortune would have seen). Fortune asserts that, when he purchased those tickets, he "was not browsing websites in search of legal violations and . . . was instead browsing [See Tickets's] website because he sincerely intended to purchase tickets." Compl. ¶ 44.

**B.    Procedural History**

Fortune initiated this suit on November 5, 2024, alleging one cause of action against See Tickets under Section 25.07 of the NYACAL. Dkt. 1. According to Fortune, See Tickets's website violated Section 25.07 because "the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket," was not disclosed "prior to the ticket being [selected] for purchase." Compl. ¶ 37 (quoting NYACAL § 25.07(4)). The Complaint is styled as a putative class action on behalf of (1) a nationwide class of "all individuals in the United States who purchased online tickets to any event in New York using [See Tickets's] website on or after August 29, 2022," and (2) a New York subclass of "all individuals in the state of New York who purchased electronic tickets to any event in New York using [See Tickets's] website on or after August 29, 2022." *Id.* ¶¶ 28-29. The Complaint seeks, among other things, compensatory and statutory damages as well as injunctive and declaratory relief. *Id.* at 20-21.

See Tickets moved to dismiss the Complaint on February 28, 2025. Dkts. 13, 14 ("Motion"). Fortune opposed the motion on March 31, 2025, Dkt. 17, and See Tickets replied on

8

April 21, 2025, Dkt. 19. Fortune filed a notice of supplemental authority on May 22, 2025, Dkt. 20, to which See Tickets responded on May 28, 2025, Dkt. 21.

## II. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). Challenges to a court's subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). Although See Tickets does not expressly label its motion as such, See Tickets raises a facial challenge to Fortune's standing—that is, one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id.*; *see* Motion at 8 (articulating the standard for facial challenges). Where the defendant raises such a facial challenge to the plaintiff's standing, a court's task "is to determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56 (citation modified). Although the plaintiff bears no evidentiary burden in refuting such a challenge, *id.*, the burden of persuasion remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring this action, *see Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009). In assessing whether the plaintiff has met this burden, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted).

9

### III. Discussion

See Tickets argues, among other things, that Fortune lacks Article III standing to seek injunctive relief and monetary damages. Motion at 16-20. The Court begins with that threshold question.[2]

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *Id.* (internal quotation marks omitted). To satisfy the "irreducible constitutional minimum of standing," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted), "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief," *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

---

[2] Because the Court concludes that it lacks subject matter jurisdiction over this case as pleaded, it does not reach the merits of Fortune's claims. *See United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) ("Subject matter jurisdiction is a 'threshold question that must be resolved before proceeding to the merits.'" (alteration adopted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998))). The Court thus does not consider See Tickets's alternative arguments for dismissal, including that Fortune has not plausibly alleged a violation of NYACAL Section 25.07(4), Motion at 9-14, that Fortune has not alleged an injury sufficient to support a private right of action under NYACAL Section 25.33, *id.* at 14-16, and that Fortune's claim is barred by the voluntary payment doctrine, *id.* at 20-22.

A.     **Injunctive Relief**

It is well established that a plaintiff seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citation modified); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). "If the injury occurred in the past—or if some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action," and so Fortune himself "must have standing in order to seek injunctive relief on behalf of the class." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (first citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976); then citing *Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004)).

See Tickets argues that Fortune does not have standing to seek injunctive relief—either on his own behalf or on behalf of a class—because his "allegations are . . . predicated entirely on past harm, namely two ticket purchases in 2023." Motion at 20. Fortune does not respond to this argument in opposing See Tickets's motion, *see generally* Opposition, and therefore has likely abandoned any claim to injunctive relief, *see Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, No. 09 Civ. 4622 (CS), 2010 WL 4968247, at *7 (S.D.N.Y. Nov. 24, 2010). Regardless, Fortune does not allege that he intends to purchase tickets from See Tickets's website in the future "and therefore does not show a likelihood of future injury." *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 300 (S.D.N.Y. 2025). Moreover, Fortune's "knowledge of [See Tickets's] allegedly deceptive pricing practices renders implausible" that he would be similarly injured in the future. *Vasell v. SeatGeek, Inc.*, No. 24 Civ. 932 (NCM), 2025 WL 240912, at *13

(E.D.N.Y. Jan. 17, 2025).  Having shown no likelihood of future harm, Fortune lacks standing to seek injunctive relief.

**B.    Monetary Damages**

See Tickets also contends that Fortune has not suffered a concrete and particularized injury for the purposes of Article III.  Motion at 16-19.  In its view, Fortune's "allegations . . . constitute nothing more than a 'bare procedural violation, divorced from any concrete harm.'"  *Id.* at 18 (quoting *Spokeo*, 578 U.S. at 341).  Specifically, See Tickets maintains that Fortune "has failed to allege any 'downstream consequences'" from the alleged statutory violation, and is "thus left with nothing more than an 'abstract interest in accurate information from' See Tickets."  Motion at 18-19 (first quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022); then quoting *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435 (S.D.N.Y. 2015), *aff'd,* 680 F. App'x 41 (2d Cir. 2017)).

Standing is not established merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *TransUnion*, 594 U.S. at 426 (internal quotation marks omitted).  Rather, "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm *beyond the statutory violation itself*."  *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 306 (2d Cir. 2024) (internal quotation marks omitted).  Thus, when a statutory violation amounts to a deprivation of information, a plaintiff "must also allege 'downstream consequences from failing to receive the required information.'"  *Harty*, 28 F.4th at 444 (quoting *TransUnion*, 594 U.S. at 442).  In other words, a plaintiff satisfies Article III's injury-in-fact requirement, by "show[ing] that he has an interest in using the information beyond bringing his lawsuit."  *Id.* (citation modified).  Absent any

12

such "adverse effects," an asserted informational injury "cannot satisfy Article III." *TransUnion*, 594 U.S. at 442 (internal quotation marks omitted).

Fortune argues that he has adequately alleged such downstream consequences from his informational injury, contending that "he overpaid for his tickets because See Tickets gave him piece-meal disclosures."³ Opposition at 27; *see id.* at 26 ("Plaintiff pleads a causal connection between See Tickets's piece-meal price disclosure and the downstream harm—the reduction of price competition which caused consumers like Plaintiff to overpay." (citation modified)). Under this theory of harm, Fortune contends that "See Tickets reduces the consumer's sticker shock" by "providing piece-meal disclosures instead of the 'all-in price,'" *id.* at 24, and is therefore able to "drive up the 'all-in' price of tickets, causing consumers to pay a price premium," *id.* at 23 (citation modified) (making the same argument in support of Fortune's statutory injury for the purposes NYACAL Section 25.33); *see also id.* at 1 (arguing that "See Tickets reduced consumers' perceived sticker shock" by "giving consumers piece-meal disclosures" and was therefore able to "reduce price competition" (internal quotation marks omitted)); *id.* at 25 (advancing this theory to argue that "[Fortune] suffered a cognizable informational injury"). To be sure, courts have recognized that a price premium theory of harm—*i.e.*, where a misrepresentation allegedly inflates a product's market price, causing consumers to overpay—may, in some circumstances, be sufficient to support Article III standing. *See, e.g.*, *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 581-82 (S.D.N.Y. 2024). But even if Fortune's reduced-sticker-shock theory of

---

³ By "piece-meal disclosures," Fortune appears to be referring to the fact that the base ticket price and any fees are listed in separate columns on the same webpage. As discussed, under either the first or second purchase flow, the base price and fees were not revealed at different stages of the ticket-purchasing process. *See* Compl. ¶¶ 10, 13, Figs. 2, 4 & 5; Veeh Decl., Exh. 2. Rather, the base price and fees were identified simultaneously on the same page.

13

harm fit that mold, the Court cannot reach that question here because this theory does not appear in his pleadings.

The theory of harm alleged in the Complaint is that See Tickets deprived consumers of critical pricing information at the moment they selected their tickets for purchase, and that the consumers were harmed by this lack of knowledge. *See* Compl. ¶ 42. Specifically, Fortune alleges that he could not have "know[n] the total cost of his tickets" because See Tickets "hid[] its service charges" on the initial ticket selection webpage. *Id.* This lack of knowledge allegedly harmed Fortune because he could not "shop around for tickets from other ticket sellers," which in turn allowed See Tickets "to reduce price competition and cause consumers like [Fortune] to overpay." *Id.* In other words, the Complaint alleges that consumers *were not told the total ticket price upfront*, and that this lack of knowledge interfered with their ability to comparison shop and thereby allowed See Tickets to extract higher prices.

The Complaint thus frames the harm entirely in terms of what consumers did not know. It does not allege that consumers were misled by the format of See Tickets's disclosures, or that any overpayment resulted from manipulated perceptions of a ticket's value. It contains no allegations connecting higher ticket prices to consumer psychology, reduced sticker shock, or the structure of See Tickets's pricing disclosures. Instead, its solitary reference to overpayment appears only in the context of a consumer's alleged lack of knowledge of the total cost at the moment of ticket selection. *See id.* ¶¶ 41-42. Moreover, even if the Court were to treat that singular reference to overpayment as distinct from the Complaint's allegations concerning lack of knowledge and hidden fees—the core of the pleaded theory of harm—that lone allegation would not suffice. The Court "cannot take the allegation . . . at face value, because [Fortune] has not said enough to make

14

it plausible." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1567 (2025).

Fortune's opposition brief tells a different story than his Complaint—both in terms of what information matters and how that information caused him harm—and all but abandons the lack-of-knowledge theory on which the Complaint rests. He no longer argues that See Tickets deprived consumers of information they needed to comparison shop, criticizing See Tickets's responsive argument—that he was not harmed because he knew the total ticket cost upfront—as "miss[ing] the mark." Opposition at 24. Instead, he entirely reframes the purported harm he suffered, and pivots to a new theory based on how See Tickets *structured* the pricing information—not based on See Tickets's *withholding* of that information. *See id.* at 25-27. As explained above, Fortune now argues that See Tickets's use of piece-meal disclosures suppressed a consumer's perceived sticker shock, thereby enabling the company to charge a higher all-in price than it otherwise could have. *See, e.g., id.* at 1 (arguing that "Fortune's injury isn't that he's too stupid to perform basic arithmetic," *i.e.*, know the total cost of his tickets, but that See Tickets gave "consumers piece-meal disclosures" and "reduced [their] perceived sticker shock"). In other words, Fortune now argues that *even though a consumer knew the total ticket price before selecting the ticket for purchase*, that consumer allegedly perceived the price differently because See Tickets's website listed the base price and fees without also separately listing the combined price (the "piece-meal disclosures"). And it is this difference in perception (the "reduced sticker shock") that allowed See Tickets to charge more than it otherwise could have. Fortune's reformulated theory of harm no longer relies on an informational deficit, but is grounded in psychological manipulation of consumer perception. And in support of this novel theory, Fortune's opposition brief cites not to the Complaint but to a Harvard Business Review article. *See, e.g., id.* at 1, 24, 26.

Courts in this Circuit have consistently held that "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). And courts "regularly reject a party's attempt to raise a new claim or theory in opposition to a dispositive motion, such as a motion to dismiss or a motion for summary judgment." *Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics, Inc.*, No. 17 Civ. 7495 (JPC), 2021 WL 1199470, at *7 (S.D.N.Y. Mar. 30, 2021) (collecting cases). Nor may a plaintiff supplement his complaint with new factual allegations or theories of liability asserted in his motion papers. *See, e.g.*, *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir. 1956) (holding that a district court was "justified" in "brush[ing] aside" a new theory of antitrust liability "made in the briefs and affidavits, but not alleged in the complaint or . . . in any way substantiated"); *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) ("[T]he District Court's dismissal of the Complaint was proper because a complaint may not be amended by advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint."); *Pall Corp. v. CleanSpace Modular, LLC*, No. 23 Civ. 2082 (JLR), 2023 WL 7412096, at *4 (S.D.N.Y. Nov. 9, 2023) (explaining that "a plaintiff cannot amend its complaint by asserting new facts or theories for the first time in opposition to the defendant's motion to dismiss" (citation modified)). Fortune thus may not rely on an Article III injury asserted for the first time in his opposition brief.

It is Fortune's burden to establish subject matter jurisdiction, including Article III standing, "by a preponderance of the evidence." *Morrison*, 547 F.3d at 170 (internal quotation marks omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation

16

modified); *see also Summerville*, 765 F. Supp. 3d at 300 ("The adverse harms must be pled in the complaint and the Court does not infer standing when a plaintiff failed to establish standing in his papers." (internal quotation marks omitted)).  Fortune has not met that burden.  He has failed to "plead enough facts to make it plausible that [he] did indeed suffer the sort of injury that would entitle [him] to relief." *Guthrie*, 113 F.4th at 311 (quoting *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021)).  That is, Fortune has not alleged enough (or any) facts in his Complaint to make his theory of injury, based on piece-meal disclosures and consumers' perceived reduced sticker shock, a plausible "downstream consequence" of his informational injury.

Accordingly, and in light of Fortune's failure to plead standing for injunctive relief as well, *see supra* III.A, See Tickets's motion to dismiss is granted.

**C.     Leave to Amend**

See Tickets argues that the Court should deny Fortune the opportunity to amend his Complaint and should dismiss the Complaint with prejudice because Fortune's "own allegations reveal that See Tickets complied with Section 25.07(4)'s requirements." Motion at 22.  Fortune has not requested leave to amend.  *See generally* Opposition.  "But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*."  *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks omitted) (collecting cases).  When deciding whether to grant *sua sponte* leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020).

17

The defects in the Complaint identified above do not necessarily mean that granting leave to amend would be futile. It may be possible, for example, that Fortune could plead allegations in support of his reduced-sticker-shock theory of injury. Moreover, a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and "when a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice," *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) (alteration adopted and internal quotation marks omitted). The Court therefore *sua sponte* grants Fortune leave to amend, but emphasizes that Fortune should file an amended complaint only if he believes that he can remedy the pleading deficiencies identified above.

### IV. Conclusion

For the foregoing reasons, the Court grants See Tickets's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and dismisses the Complaint without prejudice. Fortune must file any amended complaint within fourteen days of the date of this Opinion and Order. Fortune is cautioned that, absent a timely request for an extension, the failure to file an amended complaint by that deadline will result in the Court directing the Clerk of Court to enter judgment in favor of See Tickets and to close this case. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 13.

SO ORDERED.

Dated: August 25, 2025
      New York, New York

                                                JOHN P. CRONAN
                                            United States District Judge