UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SOLOMON FORTUNE, *individually and on behalf of all others similarly situated*,

Plaintiff,

-v-

VIVENDI TICKETING US, LLC d/b/a SEE TICKETS USA, LLC,

Defendant.

---

24 Civ. 8415 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Plaintiff Solomon Fortune bought two tickets from a website owned and operated by Defendant Vivendi Ticketing US, LLC, d/b/a See Tickets USA, LLC ("See Tickets"). On the webpages where he initially selected each ticket for purchase, See Tickets listed the base ticket price and the fees associated with his purchase separately, without also listing the cumulative amount to be paid. In this action, Fortune alleges that displaying the price in this way violated Section 25.07 of the New York Arts and Cultural Affairs Law ("NYACAL").

See Tickets moved to dismiss Fortune's initial Complaint, arguing that he lacked standing and failed to plead a statutory violation. After the Court granted See Tickets's motion, dismissing the initial Complaint without prejudice, Fortune filed an Amended Complaint with additional allegations. Now, See Tickets again moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For reasons that follow, See Tickets's latest motion to dismiss is denied.

## I. Background

### A. Facts[1]

The Court assumes familiarity with the facts alleged in this case, which were described more fully in the Court's August 25, 2025 Opinion and Order dismissing Fortune's initial Complaint. *See Fortune v. Vivendi Ticketing U.S., LLC*, No. 24 Civ. 8415 (JPC), 2025 WL 2443681, at *1 (S.D.N.Y. Aug. 25, 2025). Those facts are summarized below only to the extent relevant in resolving the current motion.

See Tickets owns and operates a website, https://www.SeeTickets.us, through which it sells tickets for events across the United States. Am. Compl. ¶ 8. On See Tickets's website, the purchase process begins when a consumer selects an event and the date on which he would like to attend that event. *Id.* ¶ 10. The consumer is then brought to a "Ticket Selection Page" which separately lists the ticket price as well as any applicable fees, such as a service fee or an administrative fee. *Id.* ¶ 10, Fig. 2. At that point, the consumer may proceed along one of two different "purchase flows." In the first purchase flow, the consumer selects his desired number of tickets and clicks a "Checkout" button. *Id.* ¶ 13. The consumer is then taken to a "Checkout Page" where, after being prompted to sign in or check out as a guest, he is shown a summary of his charges and the cumulative amount due with a ten-minute countdown timer to confirm his purchase. *Id.* ¶¶ 16-17.

The second purchase flow is different only in that there is an extra step between the Ticket Selection Page and the Checkout Page. *Id.* ¶ 14. Instead of checking out directly from the Ticket

[1] The facts herein are taken from the Amended Complaint, Dkt. 23 ("Am. Compl."), and are assumed to be true for the purposes of this Opinion and Order. *See Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

Selection Page, the consumer can "Add to Cart" his desired number of tickets before, at some later point, clicking the "Checkout" button on the top-right corner of the See Tickets website. *Id.* As with the first purchase flow, the consumer will then be brought to the Checkout Page, where he will be prompted to sign in or check out as a guest, and, after so choosing, be shown a summary of his charges and the cumulative amount due with a ten-minute countdown timer. *Id.* ¶¶ 16-17.

Fortune purchased tickets for two different events from See Tickets's website on June 9, 2023, and October 21, 2023. *Id.* ¶ 7. For both purchases, Fortune used the first purchase flow described above.

**B. Procedural History**

On November 5, 2024, Fortune initiated this suit as a putative class action, alleging one cause of action against See Tickets for violating Section 25.07 of the NYACAL and seeking damages and injunctive and declaratory relief. Dkt. 1. On February 28, 2025, See Tickets moved to dismiss Fortune's initial Complaint. Dkt. 13.

On August 25, 2025, the Court granted See Tickets's motion to dismiss without prejudice for failure to adequately plead an injury under Article III of the U.S. Constitution. *Fortune*, 2025 WL 2443681, at *5-7. As the Court explained in its Opinion and Order, Fortune had improperly shifted his theory of injury in response to See Tickets's motion to dismiss. *See id.* at *6 ("Fortune's opposition brief tells a different story than his Complaint."). Fortune's initial Complaint had "frame[d] the harm [that he suffered] entirely in terms of what consumers did not know"—*i.e.*, that See Tickets had not allowed consumers to discern "the total cost at the moment of ticket selection"—but his opposition brief "pivot[ed] to a new theory based on how See Tickets structured the pricing information"—*i.e.*, that See Tickets's listing of only the components of the ticket price (base price and fees), without displaying the cumulative, all-in price,

"suppressed . . . consumer[s'] perceived sticker shock." *Id.* This effort to "amend [the] complaint through statements made in [his] motion papers" was procedurally improper, so the Court dismissed Fortune's Complaint but granted him leave to amend. *Id.* at *7 (internal quotation marks omitted).

On September 8, 2025, Fortune filed an Amended Complaint more clearly articulating how he was injured by See Tickets's alleged violation of NYACAL Section 25.07. Dkt. 23. Now, building upon the theory that he presented in his opposition to See Tickets's motion to dismiss, Fortune alleges that See Tickets's failure to display the cumulative price at the Ticket Selection Page induced him and other consumers to purchase tickets at a price point that they would not otherwise have accepted. In particular, Fortune explains that consumers who read from left to right on See Tickets's Ticket Selection Page are first presented with a base ticket price, at which point their minds anchor on that figure and they underestimate how any added fees will alter the cumulative price of their purchase. *Id.* ¶¶ 32-35. For example, for a $75 ticket, the Ticket Selection Page on See Tickets's website might display only a $65 base ticket price and a $10 charge for fees. A consumer might not be willing to spend $75 on a ticket, but if he sees the $65 base ticket price first, he tends to anchor on that number, reducing the "sticker shock" associated with a $75 purchase. *See id.* ¶ 55 ("Plaintiff and Class members also relied on Defendant's piece-meal disclosures and reduced sticker shock in choosing to purchase their tickets.").

On October 23, 2025, See Tickets moved to dismiss Fortune's Amended Complaint. Dkt. 26 ("Motion"). First, See Tickets argues that the Amended Complaint recycles the allegations that were rejected by the Court when it dismissed Fortune's initial Complaint. *Id.* at 9-11. Second, See Tickets argues that Fortune has not stated a claim for relief because See Tickets properly disclosed the "total cost" of tickets as required under NYACAL Section 25.07 and because

Fortune's suit is barred by the voluntary payment doctrine. *Id.* at 11-12, 14. Finally, See Tickets argues that Fortune lacks standing because he has not suffered a cognizable injury-in-fact. *Id.* at 12-14. Fortune opposed See Tickets's motion on November 24, 2025, Dkt. 29 ("Opposition"), and See Tickets filed a reply in support of its motion on December 15, 2025, Dkt. 30 ("Reply").

## II. Legal Standard

See Tickets moves to dismiss Fortune's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When, as here, a motion to dismiss under Rule 12(b)(1) "is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In such cases, "[t]he task of the district court is [merely] to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (citation modified).

Similarly, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Although this "does not require detailed factual allegations, . . . [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Discussion

### A. Standing

The initial question is whether there is subject matter jurisdiction over this action, so the Court begins with See Tickets's argument that Fortune lacks standing. *See* Motion at 12-14. The

doctrine of standing requires a plaintiff to "have a personal stake in the dispute" at issue. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (internal quotation marks omitted). In other words, even if a plaintiff can show a legal violation, he must also answer: "What's it to you?" Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 882 (1983). As relevant here, standing requires that a plaintiff suffered a "concrete" injury, which is one that is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotation marks omitted). "The most obvious [kinds of concrete injury] are traditional tangible harms, such as physical and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

See Tickets contends that Fortune lacks a concrete injury because he pleads no facts showing "downstream consequences" from any violation of NYACAL Section 25.07. Motion at 13 (internal quotation marks omitted). The Court disagrees. First, Fortune alleges that See Tickets's failure to disclose the total cost of the tickets induced him to purchase tickets he would not otherwise have purchased because being presented with the base ticket price separately from the added fees reduced the "sticker shock" associated with his purchase. Am. Compl. ¶ 55. This sort of "allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of . . . standing." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021); *see also Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 577 (S.D.N.Y. 2023) (concluding that the plaintiff pleaded a concrete injury by alleging that the "[d]efendant's fictitious pricing scheme induced him to forgo better deals on identical, similar, or even better products for a similar or lower price"). In response, See Tickets argues that Fortune's allegations about sticker shock are not specific to his personal experience. *See* Motion at 13 (arguing that the Amended Complaint "vaguely suggest[s] that [See Tickets']

pricing [structure] alone can potentially confuse or mislead consumers, but Plaintiff alleges no facts showing that *he* was confused or misled" (citation modified)). At the pleading stage, however, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Additionally, even had Fortune not sufficiently alleged that he would not have purchased the same tickets but for See Tickets's violation of NYACAL Section 25.07, Fortune still alleges injury because See Tickets's pricing structure inflated the market price of its tickets, and thus caused him to pay more for those same tickets. In other words, if See Tickets had "disclosed the all-in ticket price at the outset of the purchasing process, it would have faced downward price pressure from its competitors," reducing the price that Fortune would have ultimately paid for a ticket. *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 606 n.4 (S.D.N.Y. 2025); *see also Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 583 (S.D.N.Y. 2024) ("If the merchant is forced to advertise his real price, there is little reason to think his pricing behavior will remain static—instead, he will have to adjust his real price downwards . . . to account for the market price."). Indeed, courts have held that a misrepresentation or nondisclosure can injure a plaintiff "regardless of whether she even saw the misrepresentation." *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16 Civ. 740 (JMF), 2020 WL 4694172, at *10 (S.D.N.Y. Aug. 13, 2020) (collecting cases). Fortune therefore has alleged a sufficiently concrete injury to support standing.

**B. Drip Pricing Theory**

See Tickets also argues that Fortune's Amended Complaint should be dismissed because it rehashes allegations, which See Tickets refers to as a "drip pricing theory," that were made in Fortune's now-dismissed initial Complaint and were found to be insufficient by this Court. Motion

at 9-11. According to See Tickets, this theory alleges that See Tickets provided consumers with incomplete information at the outset of the purchase process, only disclosing important details drip-by-drip. *Id.* at 9-10. See Tickets argues that the Court already rejected these drip pricing allegations because Fortune was, in fact, provided the base ticket price and all applicable fees at the Ticket Selection Page. *Id.* at 10.

But as explained above, *see supra* I.B, the Amended Complaint no longer relies on this theory of injury. Instead, the Amended Complaint pleads that although Fortune was provided with each individual component of the total price upfront, he was not, at the Ticket Selection Page, shown the sum total of those costs in violation of NYACAL Section 25.07. *See* Am. Compl. ¶ 36 ("[T]he injury here stems from [the fact that] See Tickets[] . . . chooses to reveal only the components of the total price upfront, without revealing the total price upfront."). Thus, the Court is unpersuaded by this argument for dismissing Fortune's Amended Complaint.

**C. Section 25.07**

See Tickets further argues that Fortune fails to state a claim for relief under NYACAL Section 25.07. Motion at 11-12, 14. Section 25.07 provides that any "platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." NYACAL § 25.07(4). Additionally, "[s]uch disclosure . . . shall be displayed in the ticket listing prior to the ticket being selected for purchase." *Id.* And the "[d]isclosures of subtotals, fees, charges, and any other component of the total price . . . may not be presented more prominently or in the same or larger size as the total price." *Id.*

See Tickets contends that it did not violate this provision for two reasons. First, See Tickets argues that the Ticket Selection Page's listing of a ticket's base price and the applicable fees was

sufficient, in itself, to disclose the "total" price of a ticket under Section 25.07(4). *See* Motion at 11 ("See Tickets disclosed . . . the entire quantity of money that a buyer would need to pay for each ticket."). NYACAL Section 25.07 does not define the word "total" for purposes of "total cost of the ticket," but See Tickets attempts to support its argument by pointing to a dictionary definition of "total" as "an entire quantity." Motion at 11 (quoting *Total*, Merriam-Webster Dictionary (online ed.), https://www.merriam-webster.com/dictionary/total). According to See Tickets, it displayed the "entire quantity" of the ticket price—even if that quantity was not displayed in a single, all-in sum—and therefore it cannot not be liable under Section 25.07.

The problem with See Tickets' argument is that displaying "the total cost of the ticket" under Section 25.07 requires displaying a sum of the base ticket price and the applicable fees—not just listing the base ticket price and the fees separately. Crucially, See Tickets relies on a definition of "total" for when the word is used as a noun—*e.g.*, "the total came to fifty dollars." *Total*, Merriam-Webster Dictionary, *supra*. But in the context of Section 25.07, total is an adjective modifying the word "cost." *See* NYACAL § 25.07(4) ("Every . . . platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket."). When used as an adjective, See Tickets's own dictionary defines "total" as "comprising or constituting a whole." *Total*, Merriam-Webster Dictionary, *supra*; *see also Total*, Black's Law Dictionary (12th ed. 2024) ("Whole; not divided; full; complete."). Under this definition, See Tickets never disclosed the "whole" price or the "complete" price at the Ticket Selection Page—it listed only *each part* of the whole, complete price.

Interpreting the word "total" in Section 25.07 to require only that ticket sellers disclose each component of a ticket's price would also be inconsistent with the usage of that term elsewhere in the statute. *See Schneiderman v. Am. Chem. Soc'y*, 172 F.4th 158, 176 (2d Cir. 2026) ("[T]he

consistent usage canon . . . instructs that in a given statute, the same term usually has the same meaning." (citation modified)). Section 25.07(4) provides that "[d]isclosures of subtotals, fees, charges, and any other component of the total price . . . may not be presented more prominently or in the same or larger size as the total price." If See Tickets were right that one may disclose a "total" price by separately listing each component of the whole, then it would be anomalous for this provision to distinguish between a *component* of the total price and the total price itself. *See Withers v. Combs*, No. 24 Civ. 8852 (JPC), 2026 WL 866837, at *3 (S.D.N.Y. Mar. 30, 2026) ("Because every part of a statute is to be given effect and meaning, courts should avoid statutory constructions which render one part meaningless." (citation modified)). Thus, to read Section 25.07 as a coherent whole, it is necessary to interpret "total cost" as referring to a ticket's all-in, cumulative, sum cost, rather than a listing of its various components.

See Tickets's second argument for why it did not violate Section 25.07 is that Fortune's claim is foreclosed by the voluntary payment doctrine. Motion at 14. "The voluntary payment doctrine is a New York common law doctrine barring recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Vasell v. SeatGeek, Inc.*, No. 24 Civ. 932 (NCM), 2025 WL 240912, at *14 (E.D.N.Y. Jan. 17, 2025) (internal quotation marks omitted). The doctrine does not apply, however, "when a plaintiff's claim is predicated on a lack of full disclosure by defendant." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 649 (S.D.N.Y. 2011). This is such a case, because the essence of Fortune's claim is that See Tickets's Ticket Selection Page failed to disclose the total price, as opposed to each component of the overall sum. The Court therefore follows other courts that have rejected similar efforts to use, at the pleading stage, the voluntary payment doctrine to dismiss a claim under NYACAL Section 25.07. *See, e.g.*, *Presson v. Alamo Intermediate II Holdings, LLC*, No. 24 Civ.

170 (ER), 2025 WL 692123, at *6 (S.D.N.Y. Mar. 4, 2025); *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 301-02 (S.D.N.Y. 2025); *Berryman*, 763 F. Supp. 3d at 607; *Vasell*, 2025 WL 240912, at *14-15; *Charles v. Color Factory, LLC*, No. 24 Civ. 322 (JSR), 2024 WL 1693236, at *4 (S.D.N.Y. Apr. 19, 2024).

## IV. Conclusion

For the foregoing reasons, the Court denies See Tickets's motion to dismiss Fortune's Amended Complaint. Within fourteen days of this Opinion and Order, See Tickets must file an Answer to the Amended Complaint. The parties are ordered to appear for an Initial Pretrial Conference ("IPTC") in accordance with Rule 16 of the Federal Rules of Civil Procedure on August 14, 2026, at 11:00 a.m. Unless the Court orders otherwise, the Court will conduct the IPTC by teleconference on Webex. At the scheduled time, counsel for all parties should call (855) 244-8681, access code 2302 755 2307. No later than seven days prior to that IPTC, the parties shall submit to the Court a proposed case management plan and scheduling order, a template of which is available at https://www.nysd.uscourts.gov/hon-john-p-cronan. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 26.

SO ORDERED.

Dated: July 17, 2026
New York, New York

JOHN P. CRONAN
United States District Judge